925 A.2d 838 (2007)
In re S.A.
Appeal of S.A.
Superior Court of Pennsylvania.
Argued November 14, 2006.
Filed May 17, 2007.
*839 Steven E. Burlein, Honesdale, for appellant.
Errol Charles Flynn, Asst. Dist. Atty., for Com., Participating Party.
BEFORE: STEVENS, KLEIN and PANELLA, JJ.
OPINION BY STEVENS, J.:
¶ 1 Appellant, S.A., appeals from the order entered by the Court of Common Pleas of Wayne County, which committed him to immediate inpatient involuntary treatment to a facility designated by the Department of Public Welfare. Herein, Appellant challenges on various grounds the Involuntary Treatment of Certain Sexually *840 Violent Persons Act, 42 Pa.C.S.A. §§ 6401-6409 ("Act 21").[1] We affirm.
¶ 2 By way of background, on December 15, 1999, Appellant, who was fourteen (14) years of age at the time, was adjudicated delinquent on two (2) counts of indecent assault by the Court of Common Pleas of Lackawanna County and directed to undergo evaluation. In March, 2000, the matter was transferred to Wayne County for disposition. Thereafter, in August, 2000, Appellant was placed in a specialized sex-offender treatment program in Latrobe, Pennsylvania. Following Appellant's initial placement, review hearings were conducted approximately every six (6) months. These hearings result in the transfer of Appellant to various treatment facilities, including his August 4, 2004 transfer to a step-down program in Reading.[2]
¶ 3 Due to Appellant absconding from placement while in this program, an emergency detention hearing was held in February, 2005. Following the hearing, Appellant was transferred to Northwestern Academy Sexual Offenders Program.
¶ 4 On November 8, 2005, a hearing was held before the Wayne County Court, after which it was determined that there existed a prima facie case that Appellant was in need of involuntary treatment pursuant to Act 21.[3] Subsequently, on March 10, 2006, the court held an involuntary commitment hearing pursuant to § 6403(c),[4] and, thereafter, issued an order, which stated as follows:
[T]his Court, by clear and convincing evidence, finds that [Appellant] has a medical abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence and directs the immediate commitment of [Appellant] for inpatient involuntary treatment to a facility designated by the Department of Public Welfare.
Order filed 3/13/06. The present appeal followed.[5]
*841 ¶ 5 Herein, Appellant presents the following questions for review:
I. Did the trial court err as a matter of law in finding that the retroactive effect of Act 21 of 2003 is not barred by 1 Pa. C.S.A. Section 1926?
II. Did the trial court err as a matter of law in failing to find Act 21 of 2003 punitive rather than civil in its effect?
III. Did the trial court err as a matter of law in failing to find Act 21 of 2003 violates the ex post facto prohibitions of the U.S. Constitution and the Pennsylvania Constitution?
IV. Did the trial court err as a matter of law in find [sic] the Commonwealth has a compelling state interest in public safety with respect to Act 21 of 203[sic] and the required disclosures to mental health professionals present a `momentary inconvenience'?
V. Did the trial court err as a matter of law by failing to find Act 21 violates the privacy rights afforded by the Pennsylvania and U.S. Constitutions, by requiring disclosure to mental health professionals?
VI. Did the trial court err as a matter of law by failing to find Act 21 of 2003 violates the Equal Protection guarantees of the Pennsylvania and U.S. Constitutions, and further erred by concluding Act 21 of 2003 is narrowly tailored to achieve a compelling state interest?
VII. Did the trial court err as a matter of law by failing to find Act 21 of 2003 unconstitutionally vague and violative of the Due Process clauses as found in the Pennsylvania and U.S. Constitutions?
Brief of Appellant at 11 (suggested answers omitted).[6]
¶ 6 A challenge to the constitutionality of a statute presents this Court with a question of law; thus, our scope of review is plenary. See Theodore v. Delaware Valley School District, 575 Pa. 321, 836 A.2d 76 (2003). This review is guided by the following principles:
A statute will be found unconstitutional only if it clearly, palpably and plainly violates constitutional rights. Under well-settled principles of law, there is a strong presumption that legislative enactments do not violate the constitution. Further, there is a heavy burden of persuasion upon one who questions the constitutionality of an Act.
Commonwealth v. Leddington, 908 A.2d 328, 332 (Pa.Super.2006), quoting Commonwealth v. MacPherson, 561 Pa. 571, 580, 752 A.2d 384, 388 (2000) (internal quotation marks and citations omitted). We are mindful that, when interpreting a statute, courts must look to the statute *842 itself and give plain meaning to the words contained therein. See 1 Pa.C.S.A. § 1903.
¶ 7 Turning to Appellant's first contention, he argues that the retroactive application of Act 21 violates 1 Pa.C.S.A. § 1926, which provides that, "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."[7]
¶ 8 Recently, in In the Interest of K.A.P., Jr., supra, this Court addressed the seemingly retroactive application of Act 21 by a trial court as follows:
Our understanding of the legal meaning of retroactivity is shaped by pronouncements from the highest courts in the land. As the U.S. Supreme Court has stated, "[a] statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." The Pennsylvania Supreme Court has offered a similar directive: "a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation." "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Retroactive application occurs only when the statute or rule "relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired."
Our Supreme Court and this Court have also considered the issue of retroactivity in terms of whether or not the statute in question affects vested rights.
Where . . . no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date . . .
A `vested right' is one that `so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'
Id. at 1159-1160, quoting Warren v. Folk, 886 A.2d 305, 308 (Pa.Super.2005) (internal citations omitted).
¶ 9 In declining to find that Act 21 (Chapter 64) is applied in a retroactive manner, the Court opined as follows:
Chapter 64 does not directly relate to the juvenile's prior offense in any way. The law does not give the prior offense any different legal effect than it had when he committed the offense. Rather, Chapter 64 relates to the juvenile's current and continuing status as a person who suffers from `a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.' 42 Pa.C.S.A. § 6403(d). It may be true that a juvenile would not *843 be subject to Chapter 64 but for the fact that he committed a prior juvenile offense. This, however, is not the test for retroactivity.
Id. at 1160 (citations omitted).
¶ 10 Based on the foregoing, Appellant's first contention that Act 21 was retroactive in effect and, therefore, violative of existing law forms no basis for relief.
¶ 11 Next, Appellant contends that the trial court erred in failing to find that Act 21 was punitive rather than civil in effect. The basis of his claim in this regard is that if deemed punitive, and thereby criminal, the Commonwealth would be held to a "proof beyond a reasonable doubt standard" in convincing the court that a juvenile should be subject to the dictates of Act 21.
¶ 12 In support of Appellant's position, he points to the case of Commonwealth v. Williams, 574 Pa. 487, 832 A.2d 962 (2003) ("Williams II"), in which the Supreme Court adopted the two-level inquiry enunciated by the United States Supreme Court in Smith v. Doe I, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). As discussed by the Williams II Court, in ascertaining whether legislation should be deemed unconstitutionally punitive, it first must be determined whether the legislative intent was to punish. If a determination is made that the intent was non-punitive, then the second level of inquiry is to evaluate the purpose and effect of the legislation to assess whether "the statutory scheme is nonetheless either in purpose or effect as to negate the legislature's non-punitive intent." Williams II, 574 Pa. at 502, 832 A.2d at 971.
¶ 13 This second step encompasses an analysis of the following factors:
(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on finding of scienter; (4) whether its operation will promote the traditional aims of punishment  retribution and deterrence; (5) whether behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to an alternative purpose.
Williams II, 574 Pa. at 505, 832 A.2d at 973, citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).
¶ 14 As to the first step of inquiry, in gleaning the actual intent of Act 21, it is necessary to examine § 6401, which provides that:
This chapter establishes rights and procedures for the civil commitment of sexually violent delinquent children, who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.
42 Pa.C.S.A. § 6401.
¶ 15 As evidenced by the plain meaning of the above section, the General Assembly's intent in promulgating Act 21 was not to punish sexually violent delinquent children, but rather, to establish civil commitment procedures designed to provide necessary treatment to such children and to protect the public from danger. Because the legislation is non-punitive in intent, we move to the second prong of analysis, namely, an examination of the seven factors set forth above.
¶ 16 The first factor to consider is whether the legislation involves an affirmative disability or restraint. Appellant is *844 correct in asserting that there is an affirmative restraint involved, since individuals are subject to involuntary commitment. However, one factor alone does not constitute definitive proof that Act 21 has a punitive purpose; rather, the remaining factors must be evaluated. Cf. Lehman v. Pennsylvania State Police, 576 Pa. 365, 375, 839 A.2d 265, 272 (2003). Moreover, in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the United States Supreme Court, in considering the analogous situation of civil commitment of sexually violent predators, noted that:
Although the civil commitment scheme at issue [ ] does involve an affirmative restraint, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment. The State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate non-punitive governmental objective and has been historically so regarded. The Court has, in fact, cited the confinement of mentally unstable individuals who present a danger to the public as one classic example of nonpunitive detention.
Id. at 363, 117 S.Ct. 2072 (internal citations and quotation marks omitted).
¶ 17 The second factor is whether the sanction historically has been regarded as punishment. As evidenced by the above reasoning of the Supreme Court, the civil commitment of sexually violent individuals, who pose a danger to the public, historically has not been considered punishment.
¶ 18 The third factor to consider is whether the sanction comes into play only on a finding of scienter. Again, we find guidance in the reasoning espoused by the Supreme Court in Hendricks, in which the Court stated: "[U]nlike a criminal statute, no finding of scienter is required to commit an individual who is found to be a sexually violent predator; instead, the commitment determination is made based on a `mental abnormality' or `personality disorder' rather than on one's criminal intent." Id. at 362, 117 S.Ct. 2072. Likewise, within the dictates of Act 21, a commitment determination is based on a "mental abnormality or personality disorder." See 42 Pa.C.S.A. § 6401.
¶ 19 The fourth factor is whether the sanction will promote traditional aims of punishment, namely retribution and deterrence. Since Act 21 does not affix culpability for prior criminal conduct, it cannot be deemed to have a retributive effect. Cf. Hendricks, supra. As to the deterrent effect of Act 21, although the legislation could possibly deter behavior of delinquent juveniles, the presence of a deterrent purpose does not render such legislation punitive in nature. See Smith, 538 U.S. at 101, 123 S.Ct. 1140.
¶ 20 As to the fifth factor, whether behavior to which it applies is already criminal, Appellant concedes that this factor does not lend support to his position concerning the alleged punitive nature of Act 21.
¶ 21 The sixth factor is whether an alternative purpose to which it may rationally be connected is assignable to it. "Stated another way, this factor asks whether the statute has a rational connection to a non-punitive purpose." Lehman, 576 Pa. at 377, 839 A.2d at 273. It is indisputable that non-punitive purposes of Act 21 are the safety of the public and the treatment of sexually violent delinquent children, who, due to a mental abnormality or personality disorder, have difficulty controlling sexually violent behavior. See 42 Pa. C.S.A. § 6401.
¶ 22 Finally, the seventh factor is whether the sanction appears excessive in relation *845 to the alternative purpose. In this regard, although Appellant argues that Act 21 could lead to lifetime confinement for those committed under the Act, the Act has inherent provisions for annual review to guard against the excessive commitment of an individual. See 42 Pa.C.S.A. § 6404.
¶ 23 As evidenced by the foregoing discussion and analysis, Act 21 has a non-punitive purpose and a non-punitive effect. Consequently, contrary to Appellant's assertion, it does not constitute punishment.
¶ 24 Appellant's next contention is that Act 21 violates ex post facto prohibitions. With regard to his case, he argues that the Act, which became effective approximately four years after the incident for which he was adjudicated delinquent, disadvantages him in many ways, "not the least of which is exposing him to the possibility of lifetime confinement." Brief of Appellant at 29.
¶ 25 In Lehman, the Supreme Court noted that "[t]he Ex Post Facto Clause speaks only to retroactive punishment. Thus, the issue becomes whether the civil disability imposed on [an] appellant . . . constitutes punishment." 576 Pa. at 373, 839 A.2d at 270 (internal citation omitted). The Court added that, in addressing this issue, one must utilize the two-step test enunciated in Smith and applied in Williams II.[8]Id. at 373, 839 A.2d at 270-271.
¶ 26 Herein, in addressing the foregoing issue, the dictates of Act 21 were analyzed pursuant to the Smith test and found to be non-punitive in purpose and effect. Consequently, Appellant's claim that the Act violates ex post facto principles is without merit.
¶ 27 Appellant's next contention is that the trial court erred in finding that the Commonwealth has a compelling interest in public safety, and that the disclosure of information to mental health professionals by individuals subject to Act 21 is a mere "momentary inconvenience." We hold that the alleged inconvenience of disclosing information to mental health professionals in an attempt to effectuate an appropriate determination under Act 21 is greatly outweighed by the interest in treating juveniles with certain mental abnormalities or personality disorders and ensuring public safety. Cf. Commonwealth v. Howe, 842 A.2d 436, 446 (Pa.Super.2004) (discussing the issue of privacy rights in connection with reporting requirements of Megan's Law II). Consequently, Appellant's claim forms no basis for relief.
¶ 28 Appellant's fifth contention is that his mental health records are protected by various statutes and rules that protect confidentiality, and that his rights in this regard were violated by the disclosure of his confidential records to the Board. In setting forth this contention, Appellant cite to, inter alia, 42 Pa.C.S.A. § 6307 and argues that disclosure to the Board intruded upon his right to privacy and violated § 6307 and other statutory provisions.
¶ 29 Section 6307 states, in pertinent part, that: "All files and records of the court in a proceeding under this chapter are open to inspection only by: . . . (6.4) The board for use in completing assessments." 42 Pa.C.S.A. § 6307(6.4). Thus, *846 Appellant's assertion that disclosure to the Board violates the dictates of § 6307 is without merit.
¶ 30 As to Appellant's contention that such disclosure violates additional rules and statutes, he neither alleges that, in his case, these records included statements he made to a psychiatrist or psychologist during the course of treatment nor explains the manner in which the disclosure of the records to the Board violates psychiatrist or psychologist/patient confidentiality. Cf. Commonwealth v. Kopicz, 840 A.2d 342 (Pa.Super.2003). Therefore, Appellant's claim predicated on this basis is without merit.
¶ 31 Next, Appellant contends that Act 21 violates principles of equal protection, and, therefore, the trial court erred in finding that the Act is narrowly tailored to achieve a compelling state interest. As stated by this Court in In the Interest of K.A.P., Jr., supra:
[W]e have noted that the essence of the equal protection doctrine is that like persons in like circumstances will be treated similarly[,] but recognized that the right to equal protection does not absolutely prohibit the Commonwealth from classifying individuals for the purposes of receiving equal treatment[.]
The legal framework for evaluating an equal protection challenge made to a particular statutory classification consists of three different types of classifications, each of which calls for its own standard of review. We have described this framework as follows:
The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.
Id., 916 A.2d at 1160-1161, quoting Probst v. DOT, Bureau of Driver Licensing, 578 Pa. 42, 56, 849 A.2d 1135, 1143-1144 (2004) (internal citations and quotation marks omitted).
¶ 32 Herein, the trial court, in addressing the issue of equal protection noted that:
[T]he parties agree that this issue should be subject to "strict judicial scrutiny" because a juvenile's physical freedom is a fundamental right. The parties also agree that legislation which significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate that state purpose.
Trial Court Opinion filed 3/15/06 at 6 (citation omitted).
¶ 33 We agree with the parties' position that Act 21 implicates a juvenile's right to physical freedom. See Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 339 A.2d 764, 771 (1975).[9] Having reached this *847 determination, we turn to the question of whether the Commonwealth has a compelling state interest that is addressed by application of Act 21.
¶ 34 As discussed above, § 6401 evidences a desire by the General Assembly to establish civil commitment procedures designed to provide necessary treatment to sexually violent delinquent children and to protect the public from danger. It is undisputed that the Commonwealth has a compelling interest in protecting its citizens from danger. See Commonwealth v. Moody, 843 A.2d 402, 407 (Pa.Super.2004); see also Howe, 842 A.2d at 446. Thus, we find that Chapter 64 promotes a compelling state interest.
¶ 35 As to the final consideration in regard to equal protection, particularly in light of inherent provisions contained in Act 21 for annual review, which serve as a means to guard against excessive commitment of a juvenile, we find that Act 21 is narrowly tailored to effectuate the state's interest in protecting the public. Consequently, we conclude that Appellant's claim that Act 21 violates principles of equal protection is without merit.
¶ 36 Finally, Appellant contends that Act 21 violates constitutional principles of due process in that terms contained therein are vague and open to subjective application. Appellant specifically challenges § 6403(d), which provides, in pertinent part, that:
(d) Determination and order. Upon a finding of clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for inpatient involuntary treatment[.]
42 Pa.C.S.A. § 6403(d).
¶ 37 The claim that the above section of Act 21 is impermissibly vague was addressed by this Court in In the Interest of K.A.P., Jr., supra. Therein, the Court examined recent opinions that considered and rejected similar challenges to the provisions of Megan's Law II, examined the unique phrase, "serious difficulty in controlling sexually violent behavior," which is not found in Megan's Law II, and held that § 6403 was not unconstitutionally void for vagueness. 916 A.2d at 1159. Consequently, Appellant's claim fails.
¶ 38 In conclusion, we are mindful that "[n]othing but a clear violation of the Constitutiona clear usurpation of power prohibitedwill justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." Glancey v. Casey, 447 Pa. 77, 88, 288 A.2d 812, 818 (1972), quoting Busser v. Snyder, 282 Pa. 440, 449, 128 A. 80, 83 (1925). For the reasons set forth above, we decline to find that Appellant proved Chapter 64 "clearly, palpably and plainly" violates constitutional principles. Thus, we affirm the trial court's civil commitment order.
¶ 39 Order Affirmed.
NOTES
[1] Act 21, also referred to as "Chapter 64," was enacted pursuant to Act 21 of 2003 (P.L. 97, August 14, 2003, effective February 10, 2004).
[2] This transfer occurred following reports of consistent progress being made by Appellant.
[3] As a panel of this Court recently noted:

Act 21 amended the Juvenile Act to provide for the assessment and civil commitment of certain sexually violent juveniles. The Act requires that the State Sexual Offenders Assessment Board ("the Board") evaluate specified juveniles before they leave the jurisdiction of the juvenile system. 42 Pa. C.S. §§ 6302, 6358(a). The juveniles to be evaluated are those, (1) who have been found delinquent for an act of sexual violence; (2) who have been committed to an institution or facility pursuant to the Juvenile Act; and, (3) who remained in that facility on their 20th birthdays. 42 Pa.C.S. § 6358(a).
In the Interest of K.A.P., Jr., 916 A.2d 1152, 1156 n. 3 (Pa.Super.2007).
[4] Section § 6403 "sets forth a comprehensive scheme for treating sexually violent juveniles before they `age out' of the juvenile system[,]" Id., and provides that:

(c) HearingA hearing pursuant to this chapter shall be conducted as follows:
(1) The person shall not be called as a witness without the person's consent.
(2) The person shall have the right to confront and cross-examine all witnesses and to present evidence on the person's own behalf.
(3) The hearing shall be public.
(4) A stenographic or other sufficient record shall be made.
(5) The hearing shall be conducted by the court.
(6) A decision shall be rendered within five days after conclusion of the hearing.
42 Pa.C.S.A. § 6403(c).
[5] Pursuant to the court's order to do so, Appellant filed a statement of matters complained of on appeal, to which the court issued an opinion in accordance with Pa.R.A.P. 1925(a).
[6] As a prefatory matter, we note that Appellant's Statement of Questions Involved does not conform to the requirements of Pa.R.A.P. 2116. This rule states, in pertinent part, that such Statement "should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception. . . ." Pa.R.A.P. 2116(a) (emphasis added). Herein, Appellant's Statement clearly exceeds 15 lines and encompasses 2 pages. See Appellant's Brief at 11-12. Consequently, we decline to address the claims contained on the second page of his statement and confine our discussion and analysis to the above seven questions encompassed on the first page thereof.
[7] Section 6403 of Act 21 provides, in relevant part, that:

(a) Persons subject to involuntary treatment.A person may be subject to court-ordered commitment for involuntary treatment under this chapter if the person:
(1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.A. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).
(2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.
42 Pa.C.S.A. § 6403(a)(1), (2).
[8] As explained by the Lehman Court:

This test first asks whether the legislature's intent was punitive; if so, the statute violates the Ex Post Facto Clause. If the intent is found to be civil and non-punitive, the inquiry continues, to determine whether the statute is `so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil.'
576 Pa. at 373-374, 839 A.2d at 271 (citation omitted).
[9] The Finken Court stated that:

It is obvious that involuntary commitment involves the same fundamental liberty that is at stake in criminal proceedings: the right of every individual to be unimpeded in the conduct of his affairs: An individual who is confronted with the possibility of commitment . . . runs the risk of losing his most important right  his liberty.
339 A.2d at 771 (citation, quotation marks, and footnote omitted).