J-S54018-14

2014 PA Super 228

IN RE: D.M.W.

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 270 MDA 2014

Appeal from the Order January 8, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 3-14 MH

BEFORE: LAZARUS, J., MUNDY, J., and STABILE, J.

OPINION BY MUNDY, J.: **FILED OCTOBER 10, 2014**

Appellant, D.M.W., appeals from the January 8, 2014 order continuing his involuntary civil commitment for a period of one year. After careful review, we affirm.

We summarize the relevant factual and procedural history of this case as follows. On February 17, 2009, the Commonwealth filed a petition in juvenile court, alleging Appellant was delinquent for committing acts that if committed by an adult would constitute the crimes of involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, and indecent exposure.[1] The juvenile court conducted a hearing at which Appellant admitted committing the delinquent acts. The juvenile court

---

[1] 18 Pa.C.S.A. §§ 3123, 3125, 3126 and 3127, respectively.

adjudicated Appellant delinquent and in need of treatment. As a result, Appellant was committed to a juvenile treatment facility.

At some point, the Juvenile Probation Office requested that the juvenile court conduct a review of Appellant's file. The juvenile court directed Appellant's file be forwarded to the Sexual Offenders Assessment Board (SOAB). The SOAB conducted an assessment, the results of which were sent to the juvenile court on May 13, 2012. On June 8, 2012, the juvenile court found *prima facie* evidence that Appellant "was in need of involuntary treatment[.]" Trial Court Opinion, 4/8/14, at 2; **see also** 42 Pa.C.S.A. §§ 6358(f), 6403(b)(1). On July 6, 2012, Berks County (the County) filed a petition, with juvenile court, for involuntary treatment pursuant to Section 6403(b). On January 8, 2013, the civil division[2] of the trial court conducted a hearing, at the conclusion of which the trial court concluded Appellant met the criteria necessary for involuntary civil commitment under Section 6403(d). Appellant filed a timely notice of appeal to this Court on February 6, 2013. On February 14, 2014, this Court affirmed the commitment order. **In re D.M.W.**, 86 A.3d 235 (Pa. Super. 2014), *appeal denied*, --- A.3d ---, 169 MAL 2014 (Pa. 2014). Our Supreme Court denied Appellant's petition for allowance of appeal on August 14, 2014. **Id.**

---

[2] The certified record does not reveal how the case was reassigned to the civil division of the trial court.

Meanwhile, on January 5, 2014, the trial court received the SOAB's new assessment and evaluation of Appellant. On January 8, 2014, the trial court conducted an annual review hearing pursuant to Section 6404(b)(2). At the conclusion of said hearing, the trial court renewed the commitment order for a period of one year. On February 6, 2014, Appellant filed a timely notice of appeal.[3]

On appeal, Appellant presents one issue for our review.

> A.    [Whether] the trial court erred by failing to hold a timely review hearing pursuant to 42 Pa.C.S.A. § 6404(b)(2) or [whether] 42 Pa.C.S.A. § 6404(b)(1) [was] violated by the failure of the [SOAB] and Torrence State Hospital to provide the [trial] court the necessary reports/assessments 60 days prior to the review hearing?

Appellant's Brief at 4. Appellant's sole issue on appeal pertains to the time constraints set forth in Section 6404(b) of Act 21 of 2003 (Act 21). We therefore begin by noting our well-settled standard of review regarding issues of statutory interpretation.

When "the question [is] one of statutory interpretation, our scope of review is plenary and the standard of review is *de novo*." ***Commonwealth v. Kerstetter***, 94 A.3d 991, 997 (Pa. 2014) (citation omitted). "Under the Statutory Construction Act of 1972, … our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular

---

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

legislation under review." ***Commonwealth v. Spence***, 91 A.3d 44, 46 (Pa. 2014) (citation omitted). "We are mindful that the object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly … and the best indication of the legislature's intent is the plain language of the statute." ***Commonwealth v. Walter***, 93 A.3d 442, 450 (Pa. 2014) (citation omitted). "When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute under the pretext of pursuing its spirit." ***Id.***, *citing* 1 Pa.C.S.A. § 1921(b). However, only "when the words of the statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c) of the [Statutory Construction Act]." ***Id.*** at 450-451, *citing* 1 Pa.C.S.A. § 1921(c).

Instantly, Appellant argues that the mandates of Section 6404(b) were not followed in this case. We begin with the statutory text. Section 6404 of Act 21 provides, in relevant part, as follows.

> **§ 6404. Duration of inpatient commitment and review**
>
> **(a) Initial period of commitment.--**The person shall be subject to a period of commitment for inpatient treatment for one year.
>
> **(b) Annual review.--**
>
> > (1) **Sixty days prior to the expiration of the one-year commitment period,** the director of the facility or a designee shall

submit an evaluation and the board shall submit an assessment of the person to the court.

(2) The court shall schedule a review hearing which shall be conducted pursuant to section 6403(c) (relating to court-ordered involuntary treatment) and **which shall be held no later than 30 days after receipt of both the evaluation and the assessment under paragraph (1)**. Notice of the review hearing shall be provided to the person, the attorney who represented the person at the previous hearing held pursuant to this subsection or section 6403, the district attorney and the county solicitor or a designee. The person and the person's attorney shall also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person. If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person. The order shall be in writing and shall be consistent with the protection of the public safety and appropriate control, care and treatment of the person.

…

**(d) Prohibition on discharge.--**The court shall not order discharge from involuntary treatment until the person has completed involuntary outpatient treatment pursuant to section 6404.2 (relating to duration of outpatient commitment and review).

42 Pa.C.S.A. § 6404 (emphases added). Section 6403(c) specifies the manner in which the review hearing shall be conducted.

In this case, Appellant argues that the dictates of Section 6404(b)(1) were violated. Appellant's Brief at 11. Specifically, Appellant argues that the SOAB's assessment and the facility's evaluation were submitted to the trial court only three days before the previous commitment order was to expire. *Id.* Because the assessment and evaluation were not submitted on time pursuant to the dictates of Section 6404(b)(1), Appellant argues that he should be discharged and released from involuntary civil commitment. *Id.* at 11, 15. Alternatively, Appellant argues that if the assessment and evaluation were timely, then the annual review hearing was untimely held pursuant to Section 6404(b)(2). *Id.* at 13. Appellant further avers that an untimely annual review hearing mandates his discharge and release from commitment. *Id.* at 9, 13, 15.

The County acknowledges that the "reports were not received until January 5, 2014 … [and that] a hearing [was] held on January 8, 2014[.]" County's Brief at 5. However, the County argues Appellant has failed to show any prejudice arising from the untimely filing and is therefore not entitled to be discharged from commitment. *Id.* at 6. We note that our research has garnered no published cases on point pertaining to the interplay between Sections 6404(b)(1), 6404(b)(2), and the remedy to be afforded in the event the procedures are not followed.

- 6 -

At the January 8, 2014 hearing, Meghan Dade, the executive director of the SOAB testified that the Board's assessment was sent from the SOAB on November 4, 2013, and delivered via United Parcel Service on November 6, 2013. N.T., 1/8/14, at 12. The report was addressed to the Honorable Scott E. Lash of the juvenile division of the trial court. *Id.* The judge who presided over the previous commitment hearing was the Honorable Arthur E. Grim of the civil division of the trial court.

Dr. Stacie Barnes, the clinical director of the Sexual Responsibility and Treatment Program, conducted the required ten-month evaluation of Appellant. *Id.* at 15. Dr. Barnes testified that she completed her evaluation on October 25, 2013. *Id.* She further explained that the secretary in her office routinely mails such evaluations to the court within one week of the report's completion, which in this case would be November 1, 2013. *Id.* at 16. Dr. Barnes also testified that her secretary confirmed that this procedure was followed in this case, by sending it to Judge Grim, though Dr. Barnes could not be specific as to the date of actual mailing. *Id.*

As noted above, Section 6404(b)(1) requires the clinical evaluation and SOAB's assessment be submitted to "the court" within 60 days of the current commitment order's expiration. 42 Pa.C.S.A. § 6404(b)(1). Section 6404(b)(2) requires "[t]he court" to hold a hearing no later than 30 days after the assessment and evaluation are received. *Id.* § 6404(b)(2). Thus, in this case, if we were to accept that the receipt of the SOAB's assessment

by Judge Lash on November 6, 2013, was receipt by "the court," Section 6404(b)(1) would be satisfied as the submission occurred more than 60 days before the expiration of the commitment order. However, the hearing on January 8, 2014, was more than 30 days after this date, so the time constraints of Section 6404(b)(2) would not have been met. Conversely, if we treat January 5, 2014, the date Judge Grim received the evaluation and assessment as the submission date, the hearing would be timely for purposes of Section 6404(b)(2). However, the evaluation and report would be untimely for purposes of Section 6404(b)(1).

Whichever characterization is proper, we nevertheless agree with the County that Appellant is not entitled to relief because Appellant has not shown prejudice. This Court has previously noted that "Act 21 implicates a juvenile's right to physical freedom." *In re S.A.*, 925 A.2d 838, 846 (Pa. Super. 2007) (citations omitted). In addition, these statutes "evidence[] a desire by the General Assembly to establish civil commitment procedures designed to provide necessary treatment to sexually violent delinquent children and to protect the public from danger." *Id.* at 847. This Court went on to conclude that the Commonwealth's interests forwarded by Act 21 are "compelling." *Id.* When read together, as noted above, the time constraints in Subsections (b)(1) and (b)(2) envision the documents being submitted to the trial court 60 days prior to the expiration of the commitment order, and the hearing being held not later than 30 days after

said receipt. That leaves at least 30 days for any continuances or additional hearings.

In our view, the existence of these extra 30 days, reveal a policy to complete all proceedings prior to the expiration of the existing commitment order, to further both the committed person's liberty interest to be free from government restraint and the Commonwealth's interest in protecting the public. This additional time allows the trial court flexibility in conducting annual review proceedings, permitting it to grant continuances and extra hearings if needed, so that it can have all of the materials necessary to render a decision prior to the expiration of the commitment order.

This 30-day window serves several important interests. It protects a person from being committed without a valid court order. It also prevents circumstances where time constraints might coerce the committed party to ask for a continuance beyond the expiration date of the commitment order. The 30-day window also reinforces the requirement of allowing the trial court up to five days to render its decision, protecting against the trial court needing to rush its decision, if the prior commitment order is about to expire. *See* 42 Pa.C.S.A. § 6403(c)(6) (stating, "[a] decision shall be rendered within five days after the conclusion of the hearing[]"). It also helps avoid situations in which the County might request a continuance beyond the expiration date of the commitment order. In our view, the central date of importance in these proceedings is the expiration date of the

commitment order, as the interests served by the two subsections, are measured in reference to that date as described above.

To further illustrate this point, one of the main tenants of statutory construction in this Commonwealth is "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1). Appellant's proposed construction of the statute encourages the illogical result that the trial court is required to release a committed person who otherwise qualifies for continued commitment, based solely on untimely filed documents that are otherwise accurate. Indeed, as Appellant no longer challenges the sufficiency of the evidence for his continued commitment, Appellant argues for such a result in this very case. *See* Appellant's Brief at 4 n.1. In our view, this would be an absurd result that the General Assembly could not have intended. *See* 1 Pa.C.S.A. § 1922(1). Based on these considerations, we conclude that to warrant relief, a committed person subject to Section 6404(b) proceedings must show prejudice from any untimely filing of the required evaluation and assessment under Section 6404(b)(1). We similarly conclude that prejudice must be shown for the untimeliness of a hearing under Section 6404(b)(2). *See, e.g.*, *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1286 (Pa. Super. 2013) (permitting appellee's untimely preliminary objections where the appellant "**admit[ted] there was no prejudice**, and [a]ppellees' preliminary objections were only two days late[]") (emphasis

added), *appeal granted*, 92 A.3d 809 (Pa. 2014); **accord Peters Creek Sanitary Auth. v. Welch**, 681 A.2d 167, 170 (Pa. 1996) (stating, "late pleadings may be filed **if the opposite party is not prejudiced** and justice requires[]") (internal quotation marks and citation omitted) (emphasis added).

Appellant cites to a provision in the Mental Health Procedures Act (Mental Health Act), pertaining to judicial review of a mental health review officer's certification. Appellant's Brief at 13-14; **see also generally** 50 P.S. § 7109(b) (requiring judicial review of a mental health review officer's certification within 72 hours). The provisions of the Mental Health Act have been interpreted to mean that an untimely hearing requires the patient be discharged. **See, e.g.**, **In re J.K.**, 595 A.2d 1287, 1290 (Pa. Super. 1991) (stating, "[t]his court has concluded that where the [timeliness] requirements are not fulfilled the commitment is unlawful[]") (citation omitted). However, we decline Appellant's invitation to compare Act 21 with the Mental Health Act. The purposes of the two statutes are distinct and to require them to be construed similarly would be inappropriate.

Turning to the case at bar, the record reflects that Appellant was initially offered a continuance but ultimately declined it. N.T., 1/6/14, at 6; N.T., 1/8/14, at 3. Importantly, as Appellant's hearing took place prior to the expiration of the original commitment order, there was a valid court order in place at all times authorizing Appellant's commitment. Therefore,

Appellant suffered no unauthorized loss of his personal liberty. Appellant does not argue that he suffered any other prejudice resulting from the timeliness issues in this case. Consequently, we conclude that Appellant's argument on appeal that he is entitled to discharge fails under either characterization of the proceedings below.

Based on the foregoing, we conclude Appellant's sole issue on appeal is devoid of merit. Accordingly, the trial court's January 8, 2014 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014