J-S58018-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE INTEREST OF: ALAN CRISPIN | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: ALAN CRISPIN | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 266 WDA 2018 |

Appeal from the Order February 7, 2018
In the Court of Common Pleas of Butler County Civil Division at No(s):
MS D No. 04-40311

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.: FILED OCTOBER 15, 2018

Alan Crispin (Appellant) appeals from the order denying his motion to terminate civil commitment and directing him to remain committed for one year. After careful consideration, we affirm.

Appellant is currently 34 years old. In 2002, he appeared in juvenile court, where he was adjudicated delinquent of multiple counts of involuntary deviate sexual intercourse and indecent assault, stemming from his repeated sexual abuse of two children, ages 6 and 14. The juvenile court ordered Appellant to reside in a mental health group home, and undergo mental health treatment and counseling. The court also ordered Appellant to serve two years of probation.

In the summer and fall of 2003, Appellant "made inappropriate contact" with a group home female staff member and sexually targeted a female student at Allegheny County Community College, where he was attending

classes. Memorandum Opinion and Order of Court, 2/7/18, at 1-2. Appellant subsequently indicated that he had intended to rape the student. Following a psychiatric evaluation and dispositional review hearing, the court ordered Appellant to live in the group home "subject to a safety plan that included sex offender counseling and constant supervision." Id. at 2. He was also ordered to attend the Butler County Juvenile Court Services Offender Group.

During his participation in the Offender Group, Appellant was noncompliant with the treatment program designed to address his mental health issues. Appellant "routinely sought out sexually inappropriate material on his weekend visits with his mother" and "his fantasies became increasingly deviant and complex." Id. As a result, the court referred Appellant to the Sexual Offender Assessment Board (SOAB) for evaluation.

On May 26, 2004, the SOAB determined that Appellant met the criteria for involuntary civil commitment pursuant to Act 21, 42 Pa.C.S.A. § 6401-6409. On December 16, 2004, the court found by clear and convincing evidence that Appellant had a mental abnormality or personality disorder that caused him serious difficulty in controlling sexually violent behavior and made him likely to engage in an act of sexual violence. The court thus entered an order committing Appellant to involuntary treatment for one year. Each year since 2004, the court has held annual review hearings after which it committed Appellant to an additional year of treatment under Section 6403, based on

Appellant's continued threats to harm others and lack of any meaningful improvement.

Following his commitment in 2008, Appellant appealed to this Court challenging, inter alia, the constitutionality of Act 21 on the basis that it was penal in nature and therefore required proof beyond a reasonable doubt that he was likely to commit a sexually violent act. This Court rejected Appellant's claim, holding that "Act 21 has a non-punitive purpose and non-punitive effect[,]" and thus, proof that Appellant was likely to commit a sexually violent act by clear and convincing evidence was sufficient to involuntarily commit him under Act 21. In re A.C., 991 A.2d 884, 893 (Pa. Super. 2010).[1]

On November 29, 2017, Appellant filed a motion to terminate his civil commitment. On January 17, 2018, the trial court held Appellant's most recent annual review hearing. At that hearing, Appellant admitted to wanting to rape one of the staff members at his current placement, Torrance State Hospital, and wanting to beat another staff member to death. Additionally, testimony at the review hearing revealed that Appellant continues to suffer from a mental abnormality or personality disorder (Pedophilic Disorder, Non

---

[1] Appellant also appealed from his November 13, 2012 commitment order. In re A.C., 91 A.3d 1288 (Pa. Super. 2013) (unpublished memorandum). This Court affirmed Appellant's 2012 commitment because Appellant "failed to provide any basis upon which we could be persuaded that he is entitled to relief," and noted that Appellant's argument was "completely devoid of support from relevant legal authority" and a "diatribe of full of hypotheticals, mythological references and philosophical musings." Id. at 2.

Exclusive Type and Other Specified Paraphilic Disorder as defined in the DSM-5), which causes him to have substantial difficulty in controlling sexually violent urges and makes him likely to engage in an act of sexual violence. Specifically, William G. Allenbaugh II, a member of the SOAB, testified:

> When you look at the prediction of re-offense, you have to look at the factors right now, and the thing that really concerns me is based on my interview with him where he's still having fantasies involving stabbing and killing and having sex with the corpse; that he's unable to process and in fact said a lot of time he is preoccupied with them. He uses them to distract himself from bad feelings to feel good.

> If placed in the community, my concern would be he would not have the structure that [Torrance State Hospital] offers in order to give him an opportunity to deal with that realistically without having any more victims. So, . . . right now we would look at [Appellant] as being high risk for sexual re-offense based on the mental abnormality, based on the number of victims that he has reported, and based on the fact that in treatment right now he has not been successful in learning coping skills to deal with these issues.

N.T., 1/17/18, at 18.

On February 7, 2018, the trial court denied Appellant's motion to terminate civil commitment and ordered him to remain committed for one year. Once again, the court found by clear and convincing evidence that Appellant "continues to suffer from a mental abnormality or personality disorder which results in a serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence[.]" Memorandum Opinion and Order of Court, 2/7/18, at 5. On February 21, 2018, Appellant timely appealed to this Court.

Appellant presents the following issue for review:

Whether Act 21 violates the Constitutions of Pennsylvania and the United States given the criminal nature of the statute after Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) and Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super 2017).

Appellant's Brief at 2.

Appellant again challenges the constitutionality of Act 21. We note our scope and standard of review:

[O]ur [scope] of review when considering [an] appellant's constitutional challenges is plenary, as these challenges involve pure questions of law." Commonwealth v. Leddington, 908 A.2d 328, 331 (Pa. Super. 2006).

The standard of review we apply to the court's conclusion is exacting. A statute will be found unconstitutional only if it clearly, palpably and plainly violates constitutional rights. Under well-settled principles of law, there is a strong presumption that legislative enactments do not violate the constitution. Further, there is a heavy burden of persuasion upon one who questions the constitutionality of an Act.

Commonwealth v. MacPherson, 752 A.2d 384, 388 (Pa. 2000).

In re A.C., 991 A.2d at 890.

The General Assembly enacted Act 21 to establish the:

rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S.A. § 6401.

In his prior appeal challenging the constitutionality of Act 21, Appellant raised a due process claim under the Fourteenth Amendment on the basis

- 5 -

that, inter alia, Act 21 was penal in nature and therefore, the Commonwealth should be held to a higher burden of proof than clear and convincing evidence. In our opinion deciding that appeal, this Court provided the following thorough description of the procedure for involuntarily committing an individual under the Act:

> Three requirements must be met before a person falls within the purview of Act 21. First, the person must be a juvenile who was adjudicated delinquent for an act of sexual violence, which if committed by a person as an adult would be a violation of one of an enumerated set of sex offenses. See 42 Pa.C.S. § 6403(a)(1). Second, the person must have been committed to a juvenile facility or institution and remains at that institution when the person reaches twenty years of age. See 42 Pa.C.S. § 6403(a)(2). Third, a determination must be made that the person is in "need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S. § 6403(a)(3).

> Pursuant to 42 Pa.C.S. § 6358, the [SOAB] is charged with assessing a person who has committed a sexually violent offense and remains in a juvenile facility upon attaining twenty years of age. Under Act 21, if this assessment concludes that the person is "in need of involuntary treatment," and the court concludes that a prima facie case has been presented, the court is to order that a petition be filed by the county solicitor or designee indicating that the person has met the three requirements of Section 6403(a) outlined above and should be involuntarily committed. See 42 Pa.C.S. § 6403(b)(1). After the filing of the petition, the court is required to hold a hearing at which the person has the right to appointed counsel if the person cannot afford counsel. See 42 Pa.C.S. § 6403(b)(3). The person also has the right to be assisted by an expert in this field, and if he or she cannot afford one, the court will pay for one. See 42 Pa.C.S. § 6403(b)(4).

> *        *        *

> At the hearing, it is the Commonwealth that bears the burden of proof of showing by clear and convincing evidence that "the

person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S. § 6403(d) (emphasis added). If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year. See 42 Pa.C.S. § 6404(a). The commitment is subject to review [60] days before the expiration of the one-year period. See 42 Pa.C.S. § 6404(b)(1). The review occurs by means of a hearing in accordance with the process set forth above under Section 6403(c), at which the Commonwealth bears the same burden established by Section 6403(d). See 42 Pa.C.S. § 6404(b)(2). This process can proceed indefinitely, year after year, until a court finds that the Commonwealth has not adduced sufficient evidence to establish that the person "continues to have serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S. § 6404(c).

In re A.C., 991 A.2d at 888-89.

In rejecting Appellant's challenge to the constitutionality of Act 21, we noted that this Court had previously held that "Act 21 has a non-punitive purpose and non-punitive effect" and therefore "it does not constitute punishment." Id. at 893 (quoting In re S.A., 925 A.2d 838, 845 (Pa. Super. 2007)). Thus, because we had previously found Act 21 to be non-punitive, we held that Act 21 was constitutional because the evidentiary standard of clear and convincing evidence satisfied the due process protections of the Fourteenth Amendment for civil involuntary commitment. Id. (citing Addington v. Texas, 441 U.S. 418 (1979)).

We further held:

For so long as that individual's mental abnormality results in the individual posing a danger to others, the Commonwealth may

- 7 -

civilly confine him or her. While the result of Act 21 may be that Appellant remains committed for many years to come, the law excuses this serious infringement upon his liberty, as it is done for the greater public good of protecting people from the threat presented by individuals who are likely to commit sexually violent acts.

Id. at 896.

In this appeal — similar to Appellant's second appeal of his 2012 commitment — Appellant's argument is far from the picture clarity, as it contains numerous unfounded and perplexing personal opinions and theories, as well as irrelevant non-legal citations. From what we discern, Appellant, despite this Court's prior opinion, seeks to yet again challenge the constitutionality of Act 21. This time, however, he bases his constitutional challenge on our Supreme Court's recent decision in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) and this Court's subsequent decision in Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017), both of which involve Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.42.

SORNA established a statewide registry of sexual offenders. 42 Pa.C.S.A. § 9799.16(a). On December 20, 2012, SORNA replaced and enhanced the then existing sexual offender registration statutory provisions, commonly known as Megan's Law III, 42 Pa.C.S.A. §§ 9791-9799.9 (expired). In Muniz, five of the six participating justices of our Supreme Court held that even though the General Assembly identified SORNA's enhanced registration provisions as non-punitive, they nonetheless constituted punishment. Id. at

1218. The Supreme Court further determined that the retroactive application of SORNA's registration requirements to an individual who committed sexual offenses prior to when SORNA became effective violated the ex post facto clause of the Pennsylvania Constitution. Id. at 1218-19.

In Butler, this Court held that applying SORNA's aggravated registration periods for those found to be Sexually Violent Predators is unconstitutional. Butler, 173 A.3d at 1217. We concluded that because the Supreme Court in Muniz held SORNA's registration requirements to be punitive, and an SVP designation increases the registration period, trial courts cannot apply SORNA's increased registration requirement for SVPs because SORNA does not require a fact-finder to determine, beyond a reasonable doubt, that the defendant is an SVP. Id. at 1217-18 (citing Alleyne v. U.S., 570 U.S. 99 (2013)).

Appellant argues that following Muniz and Butler, we can no longer consider the statutory involuntary civil commitment scheme of Act 21 as non-criminal and non-punitive. Accordingly, Appellant asserts that in order to continue his civil commitment, it must be proven beyond a reasonable doubt that he suffers from a mental abnormality or personality disorder that causes him to have substantial difficulty in controlling sexually violent behavior and makes him likely to engage in an act of sexual violence.

Appellant's argument is unavailing. As with his appeal to this Court from his 2012 commitment, Appellant does not cite any relevant legal authority to

support his argument, and we discern no basis upon which to conclude that our A.C. and S.A. decisions are no longer good law or binding on this Court. See Commonwealth v. Hull, 705 A.2d 911, 912 (Pa. Super. 1998) ("It is beyond the power of a panel of the Superior Court to overrule a prior decision of the Superior Court.").

Moreover, we emphasize that Appellant's reliance on Muniz is tenuous at best, as that decision stems from the retroactive application of SORNA's enhanced registration requirements to an individual who committed sexual offenses prior to the date SORNA became effective. As we held in In re K.A.P., 916 A.2d 1152 (Pa. Super. 2007), affirmed, 943 A.2d 262 (Pa. 2008), Act 21 does not operate retroactively. We explained:

> Our understanding of the legal meaning of retroactivity is shaped by pronouncements from the highest courts in the land. As the U.S. Supreme Court has stated, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." Landgraf v. U.S.I. Film Products, 511 U.S. 244, 269-70 [] (1994) (citations omitted). The Pennsylvania Supreme Court has offered a similar directive: "a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation." In re R.T., [] 778 A.2d 670, 679 (Pa. Super. 2001) [] (quoting Creighan v. City of Pittsburgh, [] 132 A.2d 867, 871 ([Pa.] 1957) (citation omitted)). "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70 []. Retroactive application occurs only when the statute or rule relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired.

Id. at 1159-60 (quotations and citations omitted).

We thus reasoned:

> [Act 21] does not give the prior offense any different legal effect than it had when [the individual] committed the offense. Rather, [Act 21] relates to the juvenile's current and continuing status as a person who suffers from "a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." 42 Pa.C.S.A. § 6403(d). It may be true that a juvenile would not be subject to [Act 21] but for the fact that he committed a prior juvenile offense. This, however, is not the test for retroactivity. See Warren [v. Folk, 886 A.2d 305, 308 (Pa. Super. 2005)] (a statute is not retroactive just because it relies on past events for operation)[.]

Id. at 1160 (emphasis in original).

Accordingly, we conclude that Appellant's constitutional challenge to Act 21 does not warrant relief. This Court has repeatedly held Act 21 to be non-punitive, non-criminal, and constitutional. See A.C., 991 A.2d at 888-93; K.A.P., 916 A.2d at 1159-60; S.A., 925 A.2d at 843 ("[T]he General Assembly's intent in promulgating Act 21 was not to punish sexually violent delinquent children, but rather, to establish civil commitment procedures designed to provide necessary treatment to such children and to protect the public from danger."). Additionally, we find Appellant's reliance on the holdings of Muniz or Butler to be inapposite. We therefore affirm the order denying Appellant's motion to terminate civil commitment and directing him to remain committed for one year.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2018