J-A25007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.M.G. | IN THE SUPERIOR COURT OF 6PENNSYLVANIA |
| APPEAL OF: J.M.G. | No. 575 MDA 2019 |

Appeal from the Order Entered March 13, 2019
In the Court of Common Pleas of Cumberland County
Civil Division at No: 2017-03322

BEFORE: STABILE, McLAUGHLIN, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.: **FILED: FEBRUARY 3, 2020**

Appellant, J.M.G., appeals from the March 13, 2019 order extending by one year his involuntary commitment under 42 Pa.C.S.A. §§ 6401-09 ("Act 21"). We affirm.

On July 6, 2015, Appellant was adjudicated delinquent of the indecent assault of his sister.[1] The crime took place in 2008 or 2009, when Appellant was 12 or 13 and his sister was six or seven years old and they were living in Dauphin County, Pennsylvania. Appellant confessed to the assault in 2013, during a voluntary commitment at the Bradley Center in Pittsburgh, Pennsylvania. Subsequently, Appellant's adoptive mother moved to Cumberland County, Pennsylvania and in January of 2014, Appellant was

---

[1] This Court affirmed the dispositional order on August 8, 2016.

transferred to Children's Home of Reading (CHOR). The Cumberland County Court of Common Pleas served as venue for the delinquency proceeding. In early 2015, while the delinquency proceeding was pending, the Commonwealth filed criminal charges[2] against Appellant based on threats he issued while he was living at CHOR. Appellant pled guilty, and on March 9, 2016 the trial court sentenced him to five years of probation consecutive to his release from any delinquency commitment.

Thereafter, on April 26, 2016, Appellant was transferred to Cove PREP, a treatment facility in Torrance State Hospital in Torrance, Pennsylvania. On May 19, 2016, the trial court ordered the Sexual Offenders Assessment Board ("SOAB") to examine whether Appellant required involuntary commitment. The trial court conducted a hearing on December 19, 2016, and on January 27, 2017, the court determined that *prima facie* evidence existed to support the commencement of an involuntary commitment. The Cumberland County Solicitor filed a petition for involuntary commitment at the trial court's direction, pursuant to 42 Pa.C.S.A. § 6403(b)(1), on February 13, 2017. After a hearing on March 13, 2017, the trial court found that Appellant met the criteria for one year of involuntary commitment pursuant to 42 Pa.C.S.A. § 6403(d). Appellant's commitment commenced on March 14, 2017, at Torrance State Hospital.

---

[2] Appellant reached his eighteenth birthday in August of 2014.

Appellant appealed from the trial court's March 13, 2017 order, and a divided panel of this Court affirmed on May 18, 2018. *In re J.M.G.*, 476 MDA 2017 (Pa. Super. May 18, 2018) (unpublished memorandum). The prior panel concluded unanimously that sufficient evidence supported Appellant's Act 21 commitment. The panel also concluded unanimously that the trial court erred in permitting the SOAB to review a document that violated Appellant's psychiatrist/patient privilege set forth at 42 Pa.C.S.A. § 5944. The panel majority concluded that the privilege violation was harmless error, while the dissent would have remanded for a new civil commitment hearing untainted by the privilege violation. On February 13, 2019, our Supreme Court granted allowance of appeal to consider the following issue:

> Where the trial court violates the psychiatrist/patient privilege of a minor who had previously been placed in a juvenile delinquency facility and ordered to participate in ongoing mental health treatment, and where the trial court allowed, over objection, statements made by the juvenile to his psychiatrist and/or psychologist to be provided to the Sexual Offender Assessment Board (SOAB) pursuant to an Act 21 civil commitment procedure, is the violation harmless error?

*In re J.M.G.*, 202 A.3d 42, 43 (Pa. 2019). That issue remains pending before the Pennsylvania Supreme Court.

Meanwhile, after a hearing on February 2, 2018, the trial court extended Appellant's involuntary commitment for a second year. On January 3, 2019, as Appellant's second year of commitment was drawing to a close, the trial court received the SOAB's evaluation regarding Appellant's need for a third year of involuntary commitment. The trial court, after a hearing conducted

on March 13, 2019, determined to extend Appellant's involuntary commitment by a third year. Several months prior to that order, on December 10, 2018, a panel of this Court held that Act 21 is unconstitutional because its commitment provisions constitute punishment. As we explain in more detail below, this Court has since withdrawn that opinion, and the matter is pending before an *en banc* panel of this Court.

Presently, Appellant appeals from the March 13, 2019 order on three separate grounds, which we paraphrase here: (1) the trial court erred in permitting the SOAB to consider unredacted documents as per our prior unpublished memorandum decision, the appeal of which is now pending before the Pennsylvania Supreme Court; (2) Act 21 is unconstitutional; and (3) Appellant is entitled to discharge because the SOAB and the trial court failed to comply with the time constraints of Act 21 in the months leading up to the March 13, 2019 order. Appellant's Brief at 4-5. We will consider these issues in turn.

First, Appellant argues that the trial court erroneously permitted the SOAB to consider unredacted files in violation of Appellant's psychiatrist/patient privilege. The Judicial Code defines that privilege as follows:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) [63 P.S. § 1201, *et. seq.*], to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and

communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

As noted above, this Court, in a prior unpublished memorandum, concluded that the trial court erred in permitting the SOAB, in the person of Dr. Robert Stein, to consider an unredacted psychiatric evaluation of Appellant dated April 7, 2015. That evaluation was the panel's sole basis for reviewing the merits of the issue and holding that a violation of privilege occurred:

> In his second issue, Appellant argues that the trial court erred in denying his motion for more redactions of the documents prepared by the Juvenile Probation Office. The trial court and the Commonwealth argue that Appellant waived this issue by failing to comply with the trial court's June 21, 2016 order granting Appellant more time to review the documents. The trial court and the Commonwealth note that the June 21, 2016 order required Appellant to request redaction of specific documents, or pages of specific documents. They argue that Appellant's July 13, 2016 motion for more redaction failed to cite with specificity the additional documents he sought to redact. We disagree. Appellant's motion for more redaction specifically requested that the trial court redact the 'psychiatric evaluation dated April 7, 2015 by Dr. Rocco Manfredi[.]' It would be nearly impossible for Appellant to be more specific about a redaction request. Thus, we conclude that Appellant preserved this claim for our review.

*In re J.M.G.*, 476 MDA 2017, unpublished memorandum at 8 (record citations omitted). The panel was unanimous in concluding that the April 7, 2015 evaluation was privileged under § 5944, but divided as to whether the error in its admission was harmless.

Presently, there is no indication that the April 7, 2015 evaluation remained a part of the record—in violation of the prior panel's unanimous

opinion as to privilege—for purposes of evaluating Appellant for a third year of commitment. Appellant does not make any contrary claim in his brief, and his brief on this issue spans less than two pages. Appellant's Brief at 14-15. He cites no specific item in his assessment file that he believes is privileged. Rather, Appellant attached the dissenting opinion from *In re J.M.G.* and "relies completely on the opinion and its well-reasoned arguments […]." *Id.* at 15. The dissenting Judge in *In re J.M.G.* explained in detail her reasons for concluding that inclusion in Appellant's assessment file of the April 7, 2015 evaluation was prejudicial error. *In re J.M.G.*, 476 MDA 2017, unpublished dissenting memorandum at 1-10. As we have already explained, Appellant has not argued that the April 7, 2015 evaluation remains in the record,[3] nor has he identified any other specific item he believes is privileged. Thus, the dissent in *J.M.G.* has no direct application here.

Furthermore, the record reflects that Appellant failed to comply with the trial court's directive to provide specific instances of privilege violation in the voluminous SOAB assessment. The trial court wrote as follows:

> The reason for [the present] appeal […] is based on counsel's own purposeful and continued noncompliance with the trial court's specific instructions to provide, on the record, any specific statements made by [Appellant] that counsel avers need to be further redacted from the assessment file. The order that directed the preparation of the assessment file initially instructed probation to redact any substantive confidential communication

---

[3] In addition, we are constrained by the prior panel's harmless error determination, which remains law of the case unless and until the Supreme Court decides otherwise.

made by juvenile. This same order next directed counsel to file written requests for specific additional redaction; however, counsel did not comply. Rather than specifically identify for further redaction any substantive confidential communication made by [Appellant] in the course of treatment, counsel averred the entire evaluation report was such a statement, admission, or confession of [Appellant], and then requested the trial court or probation to meet with counsel to identify 'each and every statement by [Appellant]' within the already redacted assessment file. Counsel's blanket request to redact the entire evaluation report was denied.

Trial Court Opinion, 6/10/19, at 2-3. Appellant has failed to articulate any basis upon which he can obtain relief on this issue in this appeal.

Next, Appellant claims Act 21 is unconstitutional based on an opinion from this Court that has been withdrawn pending *en banc* review. This Court held Act 21 unconstitutional in ***In re J.C.***, 2018 Pa. Super. 335, 1397 WDA 2017 (Pa. Super. December 10, 2018) (holding that Act 21 is unconstitutional pursuant to our Supreme Court's decisions in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) and ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2017)). By order of February 15, 2018, this Court granted *en banc* reargument and withdrew the opinion of December 10, 2018. The *en banc* panel of this Court heard argument on May 29, 2019. In his brief, Appellant explains that he preserved this issue so that he can request appropriate relief if this Court strikes down Act 21. Appellant's Brief at 17. That has not occurred yet, and at present, there exists binding precedent holding that Act 21 is constitutional. ***In re H.R.***, 196 A.3d 1059 (Pa. Super. 2018), ***appeal granted***, 207 A.3d 906 (Pa. 2019). This panel is powerless to overrule ***H.R.***

Any further pronouncement on the constitutionality of Act 21 must come from our Supreme Court or an *en banc* panel of this Court. At present, Appellant cannot obtain relief on this issue.

Finally, Appellant argues that the trial court erred in failing to schedule a timely hearing in accord with Act 21. Act 21 provides the following with regard to recommitment procedure:

> **(a) Initial period of commitment.--**The person shall be subject to a period of commitment for inpatient treatment for one year.
>
> **(b) Annual review.--**
>
> (1) Sixty days prior to the expiration of the one-year commitment period, the director of the facility or a designee shall submit an evaluation and the board shall submit an assessment of the person to the court.
>
> (2) The court shall schedule a review hearing which shall be conducted pursuant to section 6403(c) (relating to court-ordered involuntary treatment) and which shall be held no later than 30 days after receipt of both the evaluation and the assessment under paragraph (1). Notice of the review hearing shall be provided to the person, the attorney who represented the person at the previous hearing held pursuant to this subsection or section 6403, the district attorney and the county solicitor or a designee. The person and the person's attorney shall also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person. If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person. The order shall be in

- 8 -

writing and shall be consistent with the protection of the public safety and appropriate control, care and treatment of the person.

42 Pa.C.S.A. § 6404(a), (b).

Appellant's first year of commitment commenced on March 14, 2017. By order of February 2, 2018, the trial court extended that commitment for a second year. As for the third year, the SOAB sent the trial court its annual review, pursuant to § 6404(b)(1), on January 3, 2019. The trial court conducted its hearing on March 13, 2019, and Appellant's third year of commitment commenced on March 14, 2019. Thus, the SOAB did not miss the deadline specified in § 6404(b)(1) because the final day of Appellant's commitment was March 13, 2019, or 69 days **after** the SOAB filed its evaluation. By that same calculation, however, the trial court failed to conduct a hearing within 30 days of its receipt of the evaluation in accord with § 6404(b)(2). Appellant is correct insofar as he claims the trial court failed to comply with the statutory timeline set forth in § 6404. The question is whether there is any remedy for this untimely failure.

This Court addressed a similar issue in *In re D.M.W.*, 102 A.3d 492 (Pa. Super. 2014), and we held that a trial court's failure to comply with the § 6404 timeline does not warrant relief unless the committed individual suffers prejudice. There, the SOAB did not provide its assessment to the trial court until three days prior to the expiration of the juvenile's first year of commitment. *Id.* at 493. The trial court held a hearing three days later, on the final day of the commitment. *Id.* In other words, the SOAB missed its

deadline by 57 days. The trial court's hearing, only three days after its receipt of the assessment and on the final day of the juvenile's commitment, was well within the statutory deadline of 30 days after the SOAB provides its assessment. The hearing should have happened at least 30 days prior to the expiration of the juvenile's commitment, but that was impossible because the SOAB was late in providing its assessment.[4] For these reasons, the juvenile sought discharge from his commitment. *Id.* at 495.

*D.M.W.* noted that Act 21's purpose was to treat sexually violent children and protect the public from danger. *Id.* at 496 (citing *In re S.A.*, 925 A.2d 838, 847 (Pa. Super. 2007), *appeal denied*, 952 A.2d 678 (Pa. 2008)). The timeline for a recommitment proceeding reveals a "policy to complete all proceedings prior to the expiration of an existing commitment order, to further both the committed person's liberty interest to be free from government restraint and the Commonwealth's interest in protecting the public." *Id.* at 496. As for the prescribed 30-day window between the trial court's hearing and the expiration of the juvenile's commitment, it provides extra time in case the committed party wishes to seek a continuance, and it prevents a person from remaining in commitment without a valid court order.

_____

[4] Some evidence indicated that the SOAB mailed the assessment on time, but for unexplained reasons the trial court did not receive it until much later. This Court noted that a violation of the § 6404 time frame occurred regardless. If the SOAB provided the assessment on time, then the trial court's hearing was more than thirty days after its receipt and apparent mishandling of the assessment. *Id.* at 495.

*Id.* We concluded however, that the timeframe for reevaluation, and the valid purposes it serves, did not outweigh the goals of treatment and protection of the public: " [the juvenile's] proposed construction of the statute encourages the illogical result that the trial court is required to release a committed person who otherwise qualifies for continued commitment, based solely on untimely filed documents that are otherwise accurate." *Id.* Furthermore, because the hearing in *D.M.W.* took place prior to the expiration of the juvenile's commitment, "there was a valid court order in place at all times authorizing [the juvenile's] commitment." *Id.* at 497. The juvenile failed to establish any prejudice resulting from the timeliness violations, and therefore was not entitled to relief. *Id.*

Appellant argues that *D.M.W.* is distinguishable because, in this case, he remained in commitment after his commitment expired. The record does not support him. Appellant claims that his second year of commitment ended on February 2, 2019, or one year after the hearing at which the trial court recommitted him for a second year. He claims, therefore, that he remained in commitment without a valid order until March 13, 2019, when the trial court conducted a hearing and committed him for a third year. Appellant ignores the fact that the February 2, 2018 order **extended** his prior commitment by one year. Because his first year of commitment began on March 14, 2017, his second year of commitment did not begin until one year later, on March 14, 2018. Thus, the trial court's March 13, 2019 hearing fell on the final day

of his second year of commitment. Here, as in ***D.M.W.***, Appellant did not remain in commitment without a valid commitment order in place.

Appellant's argument that additional years of commitment commence on the date of the recommitment hearing (or the date of the order extending the commitment) does not find support in Act 21. Act 21 provides that the committed person "shall be subject to a period of commitment for inpatient treatment for one year." 42 Pa.C.S.A. § 6404(a)(1). Subsection (b) governs annual review and, as we have already explained, it requires the SOAB's assessment 60 days prior to the commitment's expiration and a trial court hearing within 30 days after that. 42 Pa.C.S.A. § 6404(b). If the trial court finds that further commitment is warranted, "the court shall order an additional period of involuntary inpatient treatment of one year […]." Thus, § 6404 mandates one year for the initial commitment, and one year for each additional commitment. That is precisely what occurred in this case. Nothing in § 6404 supports Appellant's argument that the additional one year of commitment runs from the date of the recommitment hearing. Were it otherwise, then strict compliance with § 6404 (i.e. the assessment 60 days prior to expiration and the hearing at least 30 days prior to expiration), would shave at least 30 days off each year of commitment when the statute plainly mandates one full year.

Furthermore, the SOAB complied with § 6404(b) by providing its assessment to the trial court on January 3, 2019, more than 60 days prior to

the expiration of Appellant's commitment on March 13, 2019. For reasons not clear from the record, the trial court's March 13, 2019 hearing fell well outside of the 30-day deadline set forth in § 6404(b)(2), but Appellant has not explained how the untimely hearing prejudiced him. Similarly, Appellant claims he did not receive the SOAB assessment until the day of the March 13, 2019 hearing (Appellant's Brief at 20-21) but he never explains how that delay prejudiced him. We observe that here, as in **D.M.W.**, Appellant does not challenge the sufficiency of the evidence in support of his commitment. In other words, he does not attempt to explain how he could have made a case for avoiding recommitment had he received the assessment earlier. Rather, Appellant rests his argument on his claim that he was held for more than one month with no valid commitment order in place. As we have explained, the procedural history of this case and the clear language of § 6404 do not support that argument.

In summary, none of Appellant's assertions of error merits relief. We therefore affirm the trial court's involuntary commitment order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/03/2020

- 13 -