J-S14033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.A.N. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: B.A.N. | : | |
| | : | |
| | : | No. 1541 MDA 2025 |

Appeal from the Order Entered November 5, 2025
In the Court of Common Pleas of Berks County
Civil Division at No. 166 2010 MH

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MAY 26, 2026**

B.A.N. (Appellant) appeals from the order re-committing him to the Sexual Responsibility and Treatment Program (SRTP) at Torrance State Hospital pursuant to 42 Pa.C.S. §§ 6401-6409 (Act 21).[1]  We affirm.

---

[1] The purpose of Act 21 is to treat sexually violent individuals and protect the public from danger.  *In re D.M.W.*, 102 A.3d 492, 496 (Pa. Super. 2014).  Act 21 provides for involuntary commitment of individuals who have "a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence."  42 Pa.C.S. § 6403(a).  The commitment period is one year, subject to an annual review, assessment, and hearing.  *Id.* at § 6404(a)-(b).  If a trial court finds commitment is warranted, the court shall order one year of involuntary inpatient treatment.  *Id.* at § 6404(b)(2).  This order is reviewed annually, and may be extended indefinitely if the person continues to meet the criteria for involuntary inpatient treatment.  *In re J.C.*, 232 A.3d 886, 888 n.1 (Pa. Super. 2020) (*en banc*).

Appellant was born in March 1989 and is 37 years old. He has been committed to various facilities since he was 15 years old. We previously explained:

In 2004[,] the Berks County Juvenile Court adjudicated [Appellant] delinquent for rape and other sexual offenses arising out of his assault of a nine-year-old girl. He was successively placed in three secure settings. At each location he engaged in sexually aggressive, assaultive, and otherwise inappropriate behaviors. In December 2008, when he was nineteen, [Appellant] was charged with assaulting a female staff member at Northwestern Academy. He later pleaded guilty to aggravated assault and was sentenced to 11 to 23 months [of] incarceration.

On October 14, 2009, the County of Berks filed a petition for involuntary commitment pursuant to [Act 21,] seeking involuntary treatment for [Appellant] due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence. The court held a hearing on the county's petition and on December 22, 2009, found [Appellant] had a mental abnormality that met the criteria necessary for involuntary commitment for one year … at Torrance State Hospital[.]

*In re B.A.N.*, 241 A.3d 466, 1934 MDA 2019, 2020 WL 6279107, at *1 (Pa. Super. filed Oct. 26, 2020) (unpublished memorandum).

Appellant "has had Act 21 reviews every year since 2009." Trial Court Opinion (TCO), 12/19/25, at 2. Pertinent to this appeal,

[Appellant] was assigned probation on 10/22/14 for assaults against SRTP personnel. He was first incarcerated at Westmoreland County Jail (WCJ) on 08/26/15 for probation violations, following further assaults on staff. His maximum expiration date was 09/09/19, resulting in his return to the SRTP. He again assaulted staff on 09/20/19. He was transported by PA state police to the WCJ on 09/24/19. Records indicate he pleaded guilty to two counts Aggravated Assault on 07/24/20, with a three-to-six-year sentence[] for each count to run concurrently. [Appellant's] previous Act 21 commitment orders have noted that

he would remain committed to the SRTP regardless of his period of incarceration and probation until it is determined that he no longer meets criteria for civil commitment under 42 Pa.C.S. section 6403.

[Appellant] spent most of his [most recent] review period incarcerated at SCI-Smithfield. He completed his maximum sentence and was returned to the SRTP on 09/25/25.

*Id.* (citation omitted).

The trial court held Appellant's review hearing on November 3, 2025. The court heard testimony from Julie Vayner, Psy.D., a psychologist with the SRTP, and Dr. Veronique Valliere, Psy.D., a psychologist with the Sexual Offenders Assessment Board.

Dr. Vayner testified to conducting a comprehensive assessment of Appellant which she detailed in a report dated October 9, 2025. N.T., 11/3/25, at 4. Dr. Vayner stated that Appellant has antisocial personality disorder and borderline personality disorder, which "are considered lifelong conditions that are meant to be managed rather than eliminated." *Id.* at 8-9. Dr. Vayner confirmed that Appellant had been incarcerated, returning to the SRTP on September 25, 2025. *Id.* at 5. She expressed "concern that [Appellant] is denying the offense that he was convicted of," and did "not recommend [Appellant] be discharged." *Id.* at 10, 12. Dr. Vayner stated:

[Appellant] has spent the last several years in the Department of Corrections and has only recently been returned to the SRTP. We would recommend that [he] work through the program and get some experience with the community before he be discharged to the community. We have not seen what his interactions are like in the community, and he has also expressed this himself that he would prefer to have some experience and exposure to the community before he is discharged from Act 21, and that is

typically what we recommend for residents[,] that we kind of give them an opportunity to have some exposure with the community, go on some community outings, and interact with the community to make sure that they are safe and make sure they're stable and that they are able to manage themselves in the community before we would recommend discharge.

*Id.* at 12.

Like Dr. Vayner, Dr. Valliere completed an assessment of Appellant and issued a report dated October 12, 2025. *Id.* at 17. Dr. Valliere had conducted the original assessment of Appellant in 2009, and was familiar with him "through all the years that he's been involved in the SRTP program." *Id.* at 19. Dr. Valliere testified that Appellant "fits the diagnostic criteria for antisocial personality disorder as well as borderline personality disorder." *Id.* at 23. She explained:

He has paraphilic arousal. Historically, he has demonstrated arousal to children, to coercion, and other deviate forms of paraphilic arousal. He continues to exhibit himself and, again, reoffended indecently exposing himself showing that his paraphilic arousal is still active even in a controlled environment. …

His personality disorder symptoms are unmanaged and prevent him from having internal boundaries … in terms of empathy to the rights of others, accountability, respect for the rules and laws of society, and ability to manage his impulses and urges. Those personality features including his denial and lack of accountability facilitate his willingness and ability to act upon his urges for sexual aggression.

*Id.* at 24-25. Dr. Valliere recommended that Appellant remain committed to inpatient treatment. *Id.* at 26.

After hearing the evidence, the trial court "again found that [Appellant] has a mental abnormality or personality disorder that results in serious

- 4 -

difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence." TCO at 2. On November 5, 2025, the court entered the order re-committing Appellant to inpatient treatment.

Appellant filed a timely appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(b). Appellant presents two issues for review:

1. Whether the finding that Appellant met the criteria for civil commitment under 42 Pa.C.S. § 6404(b)(2), in that he has [a] mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior and that Appellant is likely to engage in acts of sexual violence, was contrary to the weight of the evidence[?]

2. Whether the Commonwealth failed to present sufficient evidence to prove by clear and convincing evidence that Appellant met the criteria for civil commitment under 42 Pa.C.S. § 6404(b)(2) in that he has [a] mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior and that Appellant is likely to engage in acts of sexual violence[?]

Appellant's Brief at 6.

Both of Appellant's issues challenge the trial court's consideration of the evidence. Regarding sufficiency of the evidence:

[A]t the [Act 21] hearing, it is the [petitioner] that bears the burden of showing by clear and convincing evidence that "the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the [petitioner] meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year." *In the Interest of A.C.*, 991 A.2d 884, 889 (Pa. Super. 2010) (citations, quotation marks, and emphasis omitted). Our Supreme Court has defined clear and convincing evidence as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in

issue." ***In re R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (citing ***In re Adoption of Atencio***, 650 A.2d 1064 (Pa. 1994)).  Thus, the clear and convincing evidence test "has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." ***Commonwealth v. Meals***, 912 A.2d 213, 219 (Pa. 2006).  Moreover, "in conducting [a] sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." ***Id.*** at 218 (citing ***Commonwealth v. Sanford***, 863 A.2d 428 (Pa. 2004)).  With regard to sexually violent predator assessments, "[t]he task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance." ***Meals***, 912 A.2d at 223.

***In re J.C.***, 232 A.3d at 894 (citation omitted and formatting altered).

As to the weight of the evidence:

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court.  Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence.  It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [factfinder's] verdict is so contrary to the evidence that it shocks one's sense of justice.  In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Tejada***, 107 A.3d 788, 795–96 (Pa. Super. 2015) (citation omitted).

Here, the trial court noted Appellant "had spent only a short time at the SRTP since his release from prison.  Thus, both experts included in their reports their review of records from SCI-Smithfield concerning his behavior

while incarcerated." TCO at 4. The court discussed relevant law and recounted the testimony of Dr. Vayner and Dr. Valliere in detail. *See id.* at 4-10. Ultimately, the court found

> clear and convincing evidence that [Appellant] is still in need of the treatment and resources that can be provided by the SRTP. His prison record indicates that he continues to engage in deviant and inappropriate sexual behaviors. His propensity for violence has been manifested by numerous examples of self-harm. This propensity, as explained by Dr. Valliere, could be expressed as sexual aggression. Furthermore, at the time of the hearing[, Appellant] had only resumed treatment at the SRTP for approximately six weeks. As both Dr. Vayner and Dr. Valliere explained, much more time is needed to ensure that [Appellant] engages in stable behavior, can control any inappropriate sexual urges, and recognize and observe the boundaries expected of him by society. Therefore, we [find Appellant] has serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence in the future. …
>
> Both Dr. Vayner and Dr. Valliere presented testimony that was clear, relevant and comprehensive. We found both witnesses to be credible. Additionally, their reports, admitted by stipulation, provided important background information helpful in understanding [Appellant's] case. We think that our decision in this case is supported by reliable and trustworthy evidence and does not shock the conscience. Therefore, our conclusion that [Appellant] should be committed to the SRTP for an additional year pursuant to Act 21 is not against the weight of the evidence.

*Id.* at 10-12.

The record supports the trial court's determination that Appellant met the criteria for re-commitment pursuant to Act 21. Viewing the evidence in the light most favorable to the Commonwealth, we conclude the evidence was sufficient to establish that Appellant has a mental abnormality or personality disorder that causes him to have serious difficulty controlling sexually violent

behavior, and makes him likely to engage in an act of sexual violence if released. ***J.C.***, 232 A.3d at 894. Moreover, we discern no abuse of discretion in the trial court's conclusion that the verdict does not shock the conscience. ***Tejada***, 107 A.3d at 795-96.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/26/2026