**[J-102-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| IN RE: H.R., A MINOR | : No. 41 MAP 2019 |
| | : |
| | : Appeal from the Order of the |
| APPEAL OF: H.R., A MINOR | : Superior Court at No. 199 EDA 2018 |
| | : dated September 21, 2018 Affirming |
| | : the Order of the Court of Common |
| | : Pleas of Northampton County, Civil |
| | : Division, dated January 4, 2018, at |
| | : No. C-0048-CV-2017-10986 |
| | : |
| | : ARGUED: November 20, 2019 |


**OPINION**


**JUSTICE DOUGHERTY**                                        **DECIDED: April 1, 2020**

We granted discretionary review to determine whether the Court-Ordered
Involuntary Treatment of Certain Sexually Violent Persons statute, 42 Pa.C.S. §§6401-
6409 (Act 21), constitutes criminal punishment, such that its retroactive application is
unconstitutional under *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) (plurality)
(registration requirements under Pennsylvania's Sex Offender Registration and
Notification Act (SORNA) constitute criminal punishment and retroactive application
constitutes *ex post facto* violation). We also review the Act 21 mechanism for determining
whether an individual is a sexually violent delinquent child (SVDC),[1] and consider its

---

[1] Under Act 21, an SVDC is defined as "[a] person who has been found delinquent for an
act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.
§§3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1
(relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating

validity after our recent decision in *Commonwealth v. Butler*, 25 WAP 2018 (Pa. filed Mar. 26, 2020) (*Butler II*) (SORNA requirements for sexually violent predators (SVPs) do not constitute criminal punishment and are not subject to conditions articulated in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Apprendi v New Jersey*, 530 U.S. 466 (2000)). We hold the Superior Court correctly determined the relevant provisions of Act 21 do not constitute criminal punishment and therefore affirm that court's order.

## I. Background

### A. The relevant statutes

Act 21 governs situations where certain sexually violent persons may be involuntarily committed for treatment and applies under circumstances described in the Juvenile Act, 42 Pa.C.S. §§6301-6375. Specifically, Section 6352 of the Juvenile Act provides that a child who is adjudicated delinquent may be, *inter alia*, placed on probation "under conditions and limitations the court prescribes[,]" 42 Pa.C.S. §6352(a)(2), or committed to "an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare [(the Department)]." 42 Pa.C.S. §6352(a)(3). Pursuant to Section 6358 of the Juvenile Act, a child who has been found to be delinquent for certain acts of sexual violence, has been committed pursuant to Section 6352, and who remains committed upon reaching 20 years of age "shall be subject to an assessment by the [Sex Offender Assessment Board (the Board),]" 42 Pa.C.S. §6358(a), to determine "whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality . . . or a personality disorder, either of

---

to indecent assault) or 4302 (relating to incest) and who has been determined to be in need of commitment for involuntary treatment under [Act 21]." 42 Pa.C.S. §6402.

which results in serious difficulty in controlling sexually violent behavior." 42 Pa.C.S. §6358(c).

When the Board finds a child is in need of continued involuntary treatment, the court shall conduct a dispositional review hearing no later than 180 days before the child's 21st birthday, during which the court "shall consider the assessment, treatment information and any other relevant information regarding the delinquent child[.]" 42 Pa.C.S. §6358(e). If "the court finds there is a prima facie case that the child is in need of involuntary treatment under the provisions of Chapter 64,[2] the court shall direct that the county solicitor or a designee file a petition to initiate proceedings under the provisions of that chapter." 42 Pa.C.S. §6358(f).

Pursuant to Section 6403 of Act 21, the petition "shall set forth the facts constituting reasonable grounds to believe the individual is within the criteria for court-ordered involuntary treatment as set forth in subsection(a)." 42 Pa.C.S §6403(b)(2). Subsection(a) provides that a person may be subject to court-ordered commitment for involuntary treatment if the person:

> (1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. §3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).

---

[2] Chapter 64 of the Judicial Code encompasses Act 21 and applies to the commitment of SVDCs found to be in need of involuntary treatment pursuant to Section 6358. More specifically, Chapter 64 "establishes rights and procedures for the civil commitment of [SVDCs] who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons." 42 Pa.C.S. §6401. The term "mental abnormality" as used in the relevant statutes is defined as "[a] congenital or acquired condition of a person affecting the person's emotional or volitional capacity." 42 Pa.C.S. §6402.

(2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in any such institution or facility upon attaining 20 years of age as a result of having been adjudicated delinquent for the act of sexual violence.

(3) Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

42 Pa.C.S. §6403(a).

After the county solicitor or designee files a petition for involuntary treatment, the court must hold a public hearing. 42 Pa.C.S §6403(c). If, following the hearing, the court finds "by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence," the court must enter an order "directing the immediate commitment of the person for involuntary inpatient treatment to a facility designated by the [D]epartment." 42 Pa.C.S. §6403(d). Initially, the person is committed for a one-year period, 42 Pa.C.S. §6404(a), and, thereafter, he or she is subject to an annual review, during which the Board conducts another assessment and the court holds a review hearing. 42 Pa.C.S. §6404(b). If, following the review hearing, "the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence," the court must "order an additional period of involuntary inpatient treatment of one year[.]" 42 Pa.C.S. §6404(b)(2).

Additionally, and relevant to the present appeal, Act 21 was amended in 2011 to add provisions related to involuntary outpatient treatment (2011 amendments). Specifically, under the 2011 amendments, if the court determines after its annual review hearing that the person no longer has serious difficulty in controlling sexually violent

behavior in an inpatient setting, Section 6404(b)(2) directs the court to order the Department, in consultation with the Board, to develop an outpatient treatment plan for the person "consistent with the protection of the public safety and appropriate control, care and treatment of the person." 42 Pa.C.S. §6404(b)(2). A treatment facility director or designee may also make such a determination at any time, whereupon he or she must petition the court for a hearing, and the Board must conduct a new assessment. 42 Pa.C.S. §6404(c)(1), (2). After this hearing, "[i]f the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence," the court must "order that person be subject to the remainder of the period of inpatient commitment. Otherwise, the court shall order the [D]epartment, in consultation with the [B]oard, to develop an outpatient treatment plan for the person." 42 Pa.C.S. §6404(c). Upon the court's approval of the outpatient treatment plan, the court must then order the transfer of the person to involuntary outpatient treatment pursuant to Section 6404.2. 42 Pa.C.S. §6404.1.

Significantly, the person initially must undergo involuntary outpatient treatment for one year, 42 Pa.C.S. §6404.2(b), and the court may specify the terms and conditions of the treatment, including, but not limited to:

> (1) Absolute compliance with the outpatient treatment plan.
>
> (2) Restrictions and requirements regarding the location of the person's residence and the times the person must be physically present.
>
> (3) Restrictions and requirements regarding areas the person is not permitted to visit.
>
> (4) Restrictions and requirements regarding who the person may contact in any medium.

(5) Periodic polygraph tests.

42 Pa.C.S. §6404.2(a). If the person violates the treatment plan or any of the conditions set forth by the court, or if the treatment provider "concludes that the person is having serious difficulty controlling sexually violent behavior in an outpatient setting due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence," the court must be notified, 42 Pa.C.S §6404.2(d), whereupon "the court shall revoke the transfer to involuntary outpatient treatment and order the immediate return to involuntary inpatient treatment without a prior hearing." 42 Pa.C.S. §6404.2(e).[3]

Individuals who have been placed in involuntary outpatient treatment are subject to an annual review. Specifically, prior to the expiration of the one-year commitment period, the facility must submit an evaluation, and the Board must submit an assessment to the court. 42 Pa.C.S §6404.2(f)(1). Thereafter, the court must conduct a review hearing. 42 Pa.C.S. §6404.2(f)(2). If, following the hearing, "the court determines by clear and convincing evidence that the person has serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence," the court must order "an additional period of involuntary inpatient treatment of one year; otherwise the court shall order the discharge of the person and inform the person . . . of [his or her] obligation to attend counseling[.]" *Id.* Under this current scheme, it is possible that a person who was deemed an SVDC could be subjected to involuntary inpatient or outpatient treatment indefinitely.[4]

---

[3] Although the person is returned to involuntary inpatient treatment without a hearing, "[t]he person may file a written request for a hearing after revocation of the transfer to involuntary treatment. The court shall conduct a hearing pursuant to [S]ection 6403(c) (relating to court-ordered involuntary treatment) within ten days of filing of the request." 42 Pa.C.S. §6404.2(e).

[4] The Pennsylvania Department of Human Services (DHS), which operates the Sexual Responsibility Treatment Program (SRTP) for SVDCs at Torrance State Hospital filed an

## B. The present appeal

On September 20, 2010, at the age of 13, appellant, H.R., was adjudicated delinquent for indecent assault of a complainant less than 13 years of age.[5] Appellant was placed on official probation and, pursuant to Section 6352 of the Juvenile Act, was ordered to undergo inpatient treatment at a sex offender residential treatment facility.

Appellant remained in treatment when he turned 20 in February 2017 and he was assessed by the Board pursuant to Section 6352, which found that involuntary treatment at a sex offender residential treatment facility was still necessary. The Board provided its assessment to the court of common pleas, *see* 42 Pa.C.S. §6358(c), which then held a dispositional review hearing pursuant to Section 6358(e) and determined a *prima facie* case had been presented establishing the need for ongoing inpatient treatment. Thereafter, on December 7, 2017, the Northampton County Solicitor's designee filed a petition for involuntary treatment pursuant to Section 6403(b)(1)-(2), and appellant's counsel filed a motion to dismiss. On January 4, 2018, following a hearing, the court denied the motion to dismiss and granted the petition for involuntary treatment, determining appellant was an SVDC and committing him to one year of mental health

---

*amicus curiae* brief, not in support of either party to this appeal, but to assist this Court in reaching its decision. DHS's Brief at 1-2. DHS states approximately 600 individuals have been referred for evaluation under Act 21 since it became law over 15 years ago and only 71 of those referrals resulted in court-ordered commitment to the SRTP. *Id.* at 2-3. DHS further states 11 individuals have since been discharged from the program completely and seven individuals have been discharged to outpatient treatment since the 2011 amendments took effect; two of those seven were returned to inpatient treatment and five were completely discharged from the program. *Id.* at 3-4. DHS also asserts SRTP residents are never locked in their rooms and restraints are only used in emergency situations. *Id.* at 5-7. Lastly, DHS states the SRTP is highly structured, employs Cognitive Behavioral Therapy as its primary therapy model, and its goal is to enable residents to become healthier individuals and productive members of society. *Id.* at 9-10.

[5] Relevant information about H.R., *see* pp. 7-9 *infra*, is taken from the trial court's sealed order dated January 4, 2018.

treatment at Torrance State Hospital.[6]   Appellant filed an appeal in Superior Court,

forwarding two main arguments.  First, appellant claimed Act 21 is punitive in nature, and

thus its procedure for determining whether an individual is an SVDC, which does not

comply with the principles announced in *Apprendi* and *Alleyne*,[7] is unconstitutional.  *See,*

*e.g.*, *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) (*Butler I*) (requirements

imposed on SVPs under SORNA constitute enhanced criminal punishment such that SVP

---

[6] Appellant was initially placed on SORNA's sex offender registry as an SVDC but was later removed from the registry on February 5, 2018 pursuant to *Muniz* and *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) (*Butler I*), *rev'd Butler II*.

On February 21, 2018, the General Assembly passed Act 10 of 2018, which divided SORNA into two subchapters to address the decisions in *Muniz* and *Butler I*.  Subchapter H is based on the original SORNA statute and is applicable to offenders who committed their offenses after the December 20, 2012 effective date of SORNA, 42 Pa.C.S. §9799.11(c); Subchapter I is applicable to offenders, like appellant, who committed their offenses prior to the effective date of SORNA and to whom the *Muniz* decision might apply.  42 Pa.C.S. §9799.52.  However, Subchapter I does not provide for the registration of SVDCs and does not apply to those who were adjudicated delinquent for sexual offenses as juveniles.  Therefore, SORNA, as amended by Act 10 and a subsequent amendment, Act 29 of 2018, does not apply to appellant.  We recognize a determination of SVDC status for those who committed their offenses after the effective date of SORNA does result in an SVDC being placed on the SORNA registry under Subchapter H and SVDCs are subject to the same registration and notification requirements as SVPs (SORNA Subchapter H requirements), *see* 42 Pa.C.S. §§9799.15, 9799.16, 9799.26, 9799.27, as well as lifetime monthly counseling pursuant to Act 21, *see* 42 Pa.C.S. §6404.2(g).  However, as discussed more fully below, we find the SORNA Subchapter H requirements for SVDCs are not relevant to an analysis of whether the Act 21 restrictions constitute criminal punishment.

[7] In *Apprendi*, the United States Supreme Court held due process requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  The High Court later applied *Apprendi* to mandatory minimum sentences in *Alleyne*, holding "facts that increase mandatory minimum sentences must be submitted to the jury," and "found beyond a reasonable doubt."  570 U.S at 116.  Appellant's arguments to the Superior Court in this regard were premised upon his SVDC status being determined by a judge, rather than a jury, using a clear and convincing evidence standard and his claim that the provisions of Act 21, which are applicable to him as a result of the SVDC determination, constitute enhanced criminal punishment for his juvenile adjudication.

determination process violates due process), *rev'd Butler II*.  Second, appellant argued retroactive application to his case of the 2011 amendments, which entail criminal punishment, is also unconstitutional.  *See, e.g.*, *Muniz*, 164 A.3d at 1218 (SORNA requirements have punitive effect under *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) factors[8] and thus SORNA's retroactive application constitutes *ex post facto* violation).[9]

---

[8] In *Mendoza-Martinez*, the United States Supreme Court listed the following seven factors as a framework for determining whether a statutory sanction is so punitive as to negate a legislature's expressed intention to identify the scheme as civil or regulatory: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" 372 U.S. at 168-69 (footnotes omitted).

[9] In *Muniz*, we held SORNA's registration and notification requirements had punitive effect pursuant to *Mendoza-Martinez*.  We reasoned these statutory requirements imposed an affirmative disability or restraint upon offenders due to the onerous in-person reporting requirements and further found such requirements were akin to probation while the publication provisions and online registry were similar to public shaming, both historical forms of punishment.  164 A.3d at 1210-13.  Although we determined that neither the question of whether scienter was implicated nor whether the conduct to which SORNA applies is already a crime were relevant to our analysis, we did find SORNA's requirements had a deterrent effect because they imposed substantial periods of registration on offenders who would otherwise be subject to short terms of incarceration and promoted retribution by providing for long periods of registration, mandatory in-person reporting, and dissemination of private information on the internet.  *Id.* at 1214-16.  Notwithstanding the fact we determined the SORNA requirements were rationally connected to the nonpunitive purposes of protecting the public and preventing re-offense by sex offenders, we concluded the requirements were excessive because they were over-inclusive.  *Id.* at 1217-18.  Based on this analysis, we held SORNA's requirements were punitive and, as such, their retroactive application constituted an *ex post facto* violation.  *Id.* at 1218.  The Superior Court subsequently extrapolated from our holding in *Muniz* to hold Section 9799.24(e)(3) of SORNA is unconstitutional.  *See Butler I*, 173 A.3d at 1217-18 (SORNA requirements held punitive in *Muniz*, and thus, SVP designation process in Section 9799.24(e)(3) unconstitutionally increases criminal punishment due to failure to provide due process protections required by *Apprendi* and *Alleyne*).  In doing so, however, the Superior Court failed to recognize material differences between the

In a unanimous, published opinion, a three-judge panel of the Superior Court affirmed. *In re H.R.*, 196 A.3d 1059 (Pa. Super. 2018).[10] The panel relied on *In re S.A.*, 925 A.2d 838 (Pa. Super. 2007)[11] to hold the relevant provisions of Act 21 are not punitive in either intent or effect. *H.R.*, 196 A.3d at 1062-63. The panel additionally found appellant's reliance on *Muniz* and *Butler I* was misplaced because those decisions concerned the punitive effect of SORNA rather than Act 21, which has been found nonpunitive. *Id.* at 1063-64, *citing S.A.*, 925 A.2d at 844-45. Lastly, the panel held the 2011 amendments were similarly nonpunitive because "[t]he purpose of Act 21 is to provide for the treatment of [SVDCs]" and "[t]he out-patient provisions merely aid the court in ensuring that a juvenile receives such treatment[.]" *Id.* at 1064-65.

Appellant then filed a petition for allowance of appeal in this Court and we granted review of the following question: "Is Act 21 punitive, such that its retroactive application to [appellant] and its mechanism for determining whether an individual is a[n SVDC] are unconstitutional under [*Muniz* and *Butler I*]?" *In re H.R.*, 207 A.3d 906 (Pa. 2019) (*per curiam*). As we consider the arguments of the parties, "we recognize there is a general presumption that all lawfully enacted statutes are constitutional. In addition, as this case presents a question of law, our scope of review is plenary and we review the lower courts' legal determinations *de novo*." *Muniz*, 164 A.3d at 1195 (internal citations omitted).

## II. Arguments

statutory requirements at issue in that case and those involved in *Muniz,* or the material differences between SVPs and non-SVP sex offenders. Accordingly, we reversed the decision in *Butler II,* slip op. at 30-31.

[10] Then Senior Judge William Platt authored the opinion, which was joined by Judge Anne E. Lazarus and Judge Alice Beck Dubow.

[11] In *S.A.*, the Superior Court held Act 21 was not intended to be punitive and the *Mendoza-Martinez* factors weighed in favor of finding the statutory regime did not have a punitive effect. 925 A.2d at 843-45. *S.A.* did not include discussion of the 2011 amendments as they had yet to be enacted.

Appellant's claims regarding the constitutionality of Act 21 rise or fall on the question of whether the statutory scheme constitutes criminal punishment. As such, appellant contends Act 21 is punitive in effect under the *Mendoza-Martinez* factors. *See* n.8, *supra*. With regard to the first factor, appellant argues the Superior Court has already held the statute imposes an affirmative disability or restraint in *S.A.*, 925 A.2d at 843-44, which was decided "before the addition of mandatory outpatient treatment via the [2011 amendments.]" Appellant's Brief at 30. Coupled with the new limitations on discharge, appellant contends involuntary inpatient treatment constitutes an affirmative disability or restraint and this factor weighs in favor of finding Act 21 punitive. *Id.* at 31. Appellant also contends the SORNA Subchapter H requirements faced by many SVDCs provide additional affirmative disabilities or restraints for the same reasons the *Muniz* Court found the SORNA requirements to be an affirmative disability or restraint. *Id.* at 31-32.[12]

With regard to the second factor, appellant claims the involuntary outpatient treatment of SVDCs is akin to probation — historically considered to be punishment — because such outpatient treatment plans may include absolute compliance, restrictions regarding where SVDCs may reside and visit, whom they may contact, and periodic polygraph tests where failure to comply can result in a return to involuntary inpatient treatment. *Id.* at 34-35. Appellant contends such conditions "intimately resemble the sort of conditions typically associated with probation" and this factor weighs in favor of finding Act 21 punitive. *Id.* at 35. Appellant further argues the SORNA Subchapter H

_____

[12] Appellant recognizes he is not subject to the SORNA Subchapter H requirements, but he includes discussion of them in his analysis because he claims Act 21 is unconstitutional on its face. Appellant's Brief at 27-29. Appellant contends these allegedly punitive requirements must be considered in his facial challenge because "all former delinquents found to be SVDCs on or after December 20, 2012" are subject to Subchapter H, and thus, a substantial number of Act 21's potential applications are unconstitutional. *Id.* at 29, *citing Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1223 n.36 (Pa. 2009) (facial challenge must demonstrate substantial number of challenged statute's potential applications are unconstitutional).

requirements enhance the punitive weight of this factor because, as stated in *Muniz*, those requirements are similar to both probation and public shaming. *Id.* at 35-36.

Appellant then claims the third *Mendoza-Martinez* factor in determining punitive effect — whether the statute comes into play only after a finding of scienter — is of little significance to the inquiry and moves on to a discussion of the fourth factor — whether the statute promotes retribution and deterrence. *Id.* at 37. Although *S.A.* held this factor did not weigh in favor of finding Act 21 punitive, appellant points out the *S.A.* court also stated the provisions of Act 21 "'could possibly deter behavior of delinquent juveniles.'" *Id.*, *quoting S.A.*, 925 A.2d at 844. Appellant further argues the 2011 amendments alter the analysis conducted by the *S.A.* court as outpatient treatment which "impose[s] probationary-like conditions on an individual, following his release from inpatient treatment, who no longer has serious difficulty controlling his sexually violent behavior." *Id.* at 38. Additionally, appellant claims the 2011 amendments require yearly review hearings even after a discharge to outpatient treatment, which "permits a never-ending loop of commitment, not only of continuous involuntary inpatient treatment, but of involuntary inpatient to outpatient treatment and back to inpatient treatment, a cycle that must certainly have a deterrent effect to potential offenders." *Id.* at 39. Lastly, appellant relies on *Muniz* to argue the SORNA Subchapter H requirements also have a deterrent and retributive effect on offenders. *Id.* Based on the above, appellant contends this factor weighs in favor of finding Act 21 is punitive. *Id.* at 40.

Appellant then claims the fifth *Mendoza-Martinez* factor — whether the behavior to which the statute applies is already a crime — carries little weight in this case. *Id.* at 41. With respect to the sixth factor — whether the provisions of Act 21 are rationally related to an alternative nonpunitive purpose — appellant concedes it weighs in favor of finding Act 21 nonpunitive as both the Act 21 and SORNA Subchapter H requirements

are rationally related to a purpose other than punishment. *Id.* Regarding excessiveness, the final *Mendoza-Martinez* factor, appellant contends "[t]he onerous restrictions that Act 21 places on an outpatient SVDC vastly exceed any potential public safety concerns given that, by definition, an outpatient SVDC has been found to not have serious difficulty controlling his sexually violent behavior." *Id.* Appellant further claims "[i]t is notable that Act 21 was enacted in 2003, which means that, for eight years, the General Assembly viewed the statute as capable of protecting the public without the onerous additional outpatient treatment obligation." *Id.* at 42. Appellant contends it is clear Act 21 is now excessive and the final factor weighs in favor of finding the statute punitive. Accordingly, appellant argues the process for determining whether an individual is an SVDC is unconstitutional and the retroactive application of the 2011 amendments is unconstitutional under the *ex post facto* clauses of the United States and Pennsylvania Constitutions pursuant to *Muniz*.

In response, appellee, the Northampton County Office of the Solicitor, argues Act 21 is not punitive because "the only consequence of a judicial determination that a young person has a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses is court-ordered treatment[,]" which is different from the consequences in *Muniz* and *Butler I*. Appellee's Brief at 8-9. To this point, appellee contends the SORNA Subchapter H requirements are not relevant to our analysis "because any punitive ramifications arising from a statutory SVDC designation under Act 21 are wholly contained in SORNA" and "Act 21 is a complete law standing on its own, such that the subject matter and the procedures set forth therein are in no way impaired, rendered impossible, or rendered meaningless by the invalidation of any portion of SORNA." *Id.* at 10-11.

Appellee then discusses the *Mendoza-Martinez* factors. Appellee first recognizes that involuntary civil commitment, *i.e.* confinement or detention, is an affirmative disability or restraint sometimes considered to be punishment. *Id.* at 16. However, appellee notes the Superior Court has held "'the confinement of mentally unstable individuals who present a danger to the public [is a] classic example of nonpunitive detention.'" *Id.*, *quoting S.A.*, 925 A.2d at 844 (internal citation and quotation omitted). Appellee further states "[t]his finding is also dispositive of the second factor . . . which requires a determination as to whether the challenged sanction has historically been regarded as punishment." *Id.* Next, appellee claims the third factor weighs in favor of finding Act 21 nonpunitive because no finding of scienter is required to commit an individual under Act 21. *Id.* at 16-17. With regard to the fourth factor, appellee argues "[a] law simply cannot deter mental abnormalities or personality disorders" and "because Act 21 may operate on an individual's mental condition and their need for mental health treatment, it is not retributive." *Id.* at 17 (citation omitted). Appellee then agrees with appellant that whether the behavior to which Act 21 applies is already a crime is not significant to our analysis and that Act 21 is rationally related to the nonpunitive purpose of protecting the public, which weighs in favor of finding Act 21 nonpunitive. *Id.* at 18. Regarding excessiveness, appellee contends the 2011 amendments, including the outpatient treatment requirements, are not excessive but instead "exist for ensuring that the individual receives the treatment and support necessary to effectuate the improvement of his mental health." *Id.* at 21.

In conclusion, appellee posits the statutory regime is clearly treatment rather than punishment and compares Act 21 with the Mental Health Procedures Act (MHPA), 50 P.S. §§7101-7503, which uses a clear and convincing evidence standard and does not require a crime to take place to commit an individual for involuntary treatment. Appellee's

Brief at 23. Appellee observes involuntary treatment can be indefinite under the MHPA and the MHPA also provides for the possibility of outpatient treatment with a possible return to inpatient treatment just like Act 21. *Id.* at 24-25, *citing* 50 P.S. §7301(c). Finally, appellee notes the Superior Court has found involuntary commitment under the MHPA constitutional, *id.* at 25, *citing In re R.G.*, 11 A.3d 513 (Pa. Super. 2010) and the Supreme Court of the United States has found similar involuntary commitment statutes constitutional. *Id.* at 26, *citing Jones v. United States*, 463 U.S. 354 (1983). Appellee thus rejects appellant's attempt "to create a higher standard than the law provides by convoluting treatment and punishment." *Id.*

The Pennsylvania Office of Attorney General (OAG) intervened in the matter and filed a brief in support of appellee. The OAG contends Act 21 "is a civil, administrative statute focused on providing therapy to SVDCs in a setting commensurate with the risk they pose to the public, and which accounts for that risk through in-patient and out-patient treatment and counseling." OAG's Brief at 14. The OAG further points out Act 21 relates to juvenile proceedings, which are separate and apart from criminal proceedings and therefore the due process rights at issue in *Butler I* do not apply because "neither the Pennsylvania courts nor United States Supreme Court have found a due process right to a jury trial in juvenile adjudications." *Id.* at 22, *citing McKeiver v. Pennsylvania*, 403 U.S. 528 (1971). Additionally, the OAG argues *Muniz* is of limited precedential value to the instant case for two reasons: 1) "Act 21 is separate from [SORNA] and Pennsylvania's sex offender registration scheme, and Act 21's constitutionality does not depend on the constitutionality of [SORNA;]" and 2) "[appellant] does not have to register as a sex offender, so any [SORNA]-specific concerns do not apply to him or this appeal." *Id.* at 26.

The OAG further contends Act 21 satisfies all the requirements of a nonpunitive civil commitment statute as established by the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346 (1997), which identified six features of nonpunitive civil commitment statutes by stating, "'[w]here the State has (1) disavowed any punitive intent; (2) limited confinement to a small segment of particularly dangerous individuals; (3) provided strict procedural safeguards; (4) directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; (5) recommended treatment if such is possible; and (6) permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent.'" *Id.* at 29-30, *quoting Hendricks*, 521 U.S. at 368-69 (internal quotation marks omitted). The OAG states "the General Assembly intended Act 21 as civil and therapeutic" and even appellant "has acknowledged that Act 21 was not intended as punitive[,]" which demonstrates the General Assembly has disavowed any punitive intent. *Id.* at 31. Additionally, the OAG contends Act 21 applies only to a limited number of particularly dangerous individuals: SVDCs must have committed a serious act of sexual violence; failed to progress in the juvenile system by their 20th birthday; and possess a mental abnormality or personality disorder that compels them to commit further acts of sexual violence. *Id.* at 32-33. The OAG further argues Act 21 provides strict procedural safeguards before and after a commitment such as notice, a dispositional review hearing, a final hearing which includes the right to counsel and an expert, a clear and convincing evidence burden placed on the Commonwealth, the right to appeal, and annual reviews. *Id.* at 34. The OAG notes committed SVDCs reside in mental health facilities rather than prisons and Act 21 requires "a rigorous individualized treatment program implemented by" the staffs of such facilities. *Id.* at 41. Lastly, the OAG argues SVDCs may be released from inpatient and

outpatient treatment immediately upon showing they are no longer impaired at their annual review. *Id.* at 41-42. The OAG thus concludes Act 21 is nonpunitive pursuant to *Hendricks*.

The OAG argues a *Mendoza-Martinez* analysis leads to the same result. Although it acknowledges Act 21 imposes an affirmative disability or restraint, the OAG contends "detention 'does not inexorably lead to the conclusion that the government has imposed punishment,' and that the state's ability to restrict the freedom of the dangerously unstable mentally ill is 'one classic example of nonpunitive detention.'" *Id.* at 48, *quoting S.A.*, 925 A.2d at 844 (internal citation and quotation omitted). The OAG further argues the outpatient treatment provisions for SVDCs do not constitute an affirmative disability or restraint based on the similarities between SVDCs and SVPs and the fact that "the *Muniz* Court's holding did not upset its finding in [*Commonwealth v. Williams*, 832 A.2d 962 (Pa. 2003) (*Williams II*)][13] that the more-demanding counseling requirements for SVPs do not

---

[13] In *Williams II*, this Court considered whether the registration, notification and counseling (RNC) requirements applicable to SVPs under Megan's Law II, a predecessor to SORNA, constituted criminal punishment. 832 A.2d at 964. The *Williams II* Court conducted an analysis under the *Mendoza-Martinez* rubric and found all factors weighed in favor of finding the RNC requirements nonpunitive. Specifically, and relevant to this appeal, *Williams II* found the RNC requirements: 1) did not impose an affirmative disability or restraint because SVPs "remain[ed] free to live where they choose, come and go as they please, and seek whatever employment they may desire[;]" 2) were not analogous to public shaming or probation because disclosure of personal information was "aimed, not at stigmatizing [SVPs], but at allowing potentially vulnerable members of the public to avoid being victimized" and "counseling, by its very nature, is rehabilitative[;]" 3) did not apply based upon a finding of scienter because SVP status was determined "based upon a mental abnormality[;]" 4) did not promote retribution and deterrence because "they do not require the individual to pay his debt to society" and SVPs, by definition, are "not likely to be deterred, even by the threat of confinement[;]" 5) were not applied to criminal conduct or "conduct at all, but to an individual's status as suffering from a serious psychological defect[;]" 6) were rationally connected to the nonpunitive purpose of protecting the public; and 7) were "not in themselves sufficiently onerous to qualify as punishment based upon alleged excessive." *Id.* at 973-83 (internal citations and quotations omitted). Regarding excessiveness, however, the *Williams II* Court recognized "one of the most troubling aspects of [Megan's Law II was] that the [RNC

constitute an affirmative disability or restraint because of their therapeutic nature." *Id.* at 49-50, *citing Muniz*, 164 A.3d at 1211 and *Williams II*, 832 A.2d at 973-75.

The OAG also argues that neither inpatient nor outpatient treatment for sex offenders has historically been regarded as punishment because "'counseling does not serve punitive ends[,]'" *id.* at 52, *quoting Williams II*, 832 A.2d at 977, and individuals are not subject to inpatient and outpatient treatment based on a conviction under Act 21 but instead based on "the **meaning** of the facts at hand, along with the interpretations and analyses of experts tasked with assessing [the individual.]" *Id.* at 53 (internal quotation omitted) (emphasis in original). As such, the OAG contends the second factor weighs in favor of finding Act 21 nonpunitive. The OAG also finds the third factor — whether Act 21 restrictions are triggered only upon a finding of scienter — to be significant since, unlike in *Muniz*, "criminal intent does not determine whether a person is an SVDC, but rather whether they have a mental abnormality or personality disorder." *Id.* at 55 (citations omitted). As such, the OAG claims this factor "further supports finding [Act 21] nonpunitive." *Id.*

Along these lines, the OAG also claims the differences between SVDCs and the non-SVPs at issue in *Muniz* support a finding that Act 21 does not promote the traditional aims of punishment — retribution and deterrence — and this factor also weighs in favor of finding Act 21 nonpunitive. *Id.* In support of this assertion, the OAG contends because SVDCs are unlikely to be deterred due to a mental abnormality or personality disorder that prevents them from exercising control over their behavior, "the deterrence rationales

---

requirements last] for the [SVPs] entire lifetime" and "[a] reasonable argument could be made that, to avoid excessiveness, the Legislature was required to provide some means for a [SVP] to invoke judicial review in an effort to demonstrate that he no longer poses a substantial risk to the community." *Id.* a 982-83. However, since the record in that case did not provide any information regarding successful SVP treatment, the *Williams II* Court found its consideration of the *Mendoza-Martinez* factors led to the conclusion that the RNC requirements under Megan's Law II were nonpunitive. *Id.* at 983-84.

discussed in *Muniz* do not apply to those burdened with such sexually deviant compulsive impulses." *Id*. at 56. The OAG also claims *Muniz* is distinguishable because Act 21 applies only to those adjudicated delinquent for a small number of serious crimes who are also found to possess a mental abnormality or personality disorder whereas the SORNA requirements at issue in *Muniz* strictly applied to those convicted of a large number of crimes, many of which were misdemeanors. *Id*. at 57, *citing Muniz*, 164 A.3d at 1214-15. The OAG further claims retribution is not at issue under Act 21 "because designation as an SVDC does not follow a juvenile adjudication, but results from the processes set forth in the statute[.]" *Id*. at 59. The OAG argues the fifth factor — whether the behavior to which Act 21 applies is already a crime — is significant here and supports a finding Act 21 is nonpunitive because individuals are subject to Act 21 when "they possess a mental abnormality or personality disorder resulting in serious difficulty controlling sexually violent behavior, not because they were adjudicated delinquent." *Id*. at 60.

Relying on *S.A.*, the OAG argues it is "'[i]ndisputable that non-punitive purposes [of] Act 21 are the safety of the public and treatment of [SVDCs]'" and "this factor supports finding Act 21 nonpunitive." *Id*., *quoting S.A.*, 925 A.2d at 844. Regarding excessiveness, the OAG argues this Court's concerns in *Muniz* about the volume of offenses that required registration under SORNA "do not apply to Act 21, which references only a limited number of serious sex offenses[,]" and this Court's concerns in *Williams II* regarding the fact Megan's Law II lacked a mechanism allowing SVPs to challenge their designation "do not apply to Act 21, which requires annual review of an SVDC's civil commitment and a renewed finding that they continue to qualify for inpatient treatment." *Id*. at 61-62. The OAG further claims outpatient treatment, which is "less-restrictive and less-onerous" is not punishment but instead "serves to facilitate an SVDC's safe transition from a confined

controlled environment to an independent life in the community, while seeking to avoid relapse into sexually violent conduct through continued therapy and supervision." *Id.* at 62. Accordingly, the OAG contends "Act 21 is not excessive in relation to its purpose[s] of treatment and protecting the public from SVDCs, and this factor further supports finding the Act nonpunitive." *Id.* The OAG emphasizes that, "[a]part from the inpatient commitment of SVDCs under Act 21 functioning as an affirmative disability or restraint, all of the *Mendoza-Martinez* factors support finding Act 21 nonpunitive." *Id.*

Alternatively, the OAG argues even if this Court were to hold Act 21 is punitive, the process for determining whether an individual is an SVDC does not violate *Alleyne* and *Apprendi* for two reasons. First, the OAG contends the *Apprendi* rule does not apply here because *Apprendi* applies only to criminal proceedings and "Act 21 does not involve criminal law or criminal proceedings," which is proven by the fact that appellant "was never charged with or convicted of a crime and was not committed to inpatient treatment under Act 21 pursuant to a criminal conviction." *Id.* at 68. Second, the OAG, relying upon *Oregon v. Ice*, 555 U.S. 160 (2009), contends the *Alleyne* and *Apprendi* principles are inapposite where "the facts in question were not those traditionally decided by juries under the common law." *Id.* at 70. In support of this theory, the OAG claims "[b]ecause Act 21 is a part of a recent phenomenon of sex offender-specific statutory schemes unconnected to historical, common-law practices, the *Apprendi* rule does not apply." *Id.* at 72. The OAG further argues that whether an individual has a mental abnormality or personality disorder is the type of evidence that would not normally be determined by a jury as "evidence relevant to whether a defendant is likely to reoffend or pose a future danger to the public is exactly the type typically precluded from a jury's consideration, because such facts 'could substantially prejudice the defense at the guilt phase of a trial.'" *Id.* at 79, *quoting Ice*, 555 U.S. at 172. As such, the OAG contends this Court should "rule that

judicial fact-finding under Act 21 falls outside the scope of *Apprendi* and *Alleyne* and is not subject to the *Apprendi* rule." *Id.* at 83.

### III. Analysis

As we have seen, appellant believes the retroactive application of Act 21 to his case results in an *ex post facto* violation pursuant to *Muniz*, and that Act 21's mechanism for determining whether an individual is an SVDC violates due process. However, appellant may succeed in the present appeal only if we first determine Act 21 constitutes criminal punishment. *See Muniz*, 164 A.3d at 1208 (*ex post facto* claims depend upon finding sanctions constitute criminal punishment); *Commonwealth v. Lee*, 935 A.2d 865, 880 (Pa. 2007) (due process claims under *Apprendi* and *Alleyne* cannot succeed where sanctions do not constitute punishment). Preliminarily, we agree with the OAG that *Muniz* is of limited precedential value because SVDCs are different from the non-SVP SORNA registrants in *Muniz* due to heightened public safety concerns based on the determination that an SVDC "is in need of commitment for involuntary treatment due to a mental abnormality . . . or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior." 42 Pa.C.S. §6358(c); *see also Butler II*, slip op. at 20 ("SVPs are different from the non-SVP SORNA registrants at issue in *Muniz* due to heightened public safety concerns based on the determination SVPs have a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses"), *quoting* 42 Pa.C.S. §9799.12.

We also agree with appellee and the OAG that the SORNA Subchapter H requirements are not relevant to our analysis of whether Act 21 constitutes criminal punishment. As appellant himself concedes, he is not subject to the SORNA Subchapter H requirements. *See* 42 Pa.C.S. §9799.11(c); Appellant's Brief at 27-28. Moreover, appellant's claim that he is forwarding a facial constitutional challenge is waived as he

failed to raise it in the courts below. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Instead, appellant argued Act 21 and SORNA were inextricably linked such that the statutes were incapable of severance. *See* Appellant's Brief at 27 ("Before the Trial Court, [appellant] had argued that SORNA and Act 21 were inextricably linked together, forming a non-severable, integrated framework."). In any event, appellant's facial challenge necessarily fails because he has failed to prove a "substantial number of the challenged statute's potential applications are unconstitutional." *Clifton*, 969 A.2d at 1223 n.36 (internal citation and quotation omitted).

First, the SORNA Subchapter H requirements relating to registration and notification are identical to corresponding portions of SORNA's registration, notification and counseling (RNC) requirements for SVPs. We recently determined these RNC requirements are non-punitive. *See Butler II*, slip op. at 30. Additionally, even if they were punitive, the overwhelming majority of situations where Act 21 applies do not involve the SORNA Subchapter H requirements. DHS's Brief at Appendix A (only eight of 72 individuals subject to Act 21 were adjudicated delinquent in 2012 or later and were thus potentially subject to SORNA Subchapter H requirements). Accordingly, the SORNA Subchapter H requirements are not relevant to our analysis of whether Act 21 constitutes criminal punishment.

With the foregoing in mind, we must conduct an examination of Act 21 using the two-part inquiry employed in *Muniz*:

> We first consider whether the General Assembly's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent. If we find the General Assembly intended to enact a civil scheme, we then must determine whether the law is punitive in effect by considering the *Mendoza-Martinez* factors. We recognize only the clearest proof may establish that a law is punitive in effect. Furthermore, in

determining whether a statute is civil or punitive, we must examine the law's entire statutory scheme.

*Muniz*, 164 A.3d at 1208 (internal citations and quotations omitted). *See also Butler II*, slip op. at 20-21 (applying two-part test to determine whether RNC requirements were punitive in intent or effect).

## A. Intent of the General Assembly

The parties agree the General Assembly's stated intention in enacting Act 21 was nonpunitive. *See* Appellant's Brief at 30 (recognizing Act 21's "expressed intent" is non-punitive); Appellee's Brief at 12-13 ("sole objective of Act 21 is ensuring that young people receive necessary treatment"); OAG's Brief at 46 (Court must determine whether Act 21 is punitive in effect despite nonpunitive legislative intent). Following a review of the statute, we reach the same conclusion.

Analyzing the General Assembly's purpose in enacting a particular statute "is a question of statutory construction and we must consider the statute's text and its structure to determine the legislative objective. Furthermore, considerable deference must be afforded to the intent as the legislature has stated it." *Muniz*, 164 A.3d at 1209 (internal citations, quotations, and brackets omitted). The plain language of Section 6401 confirms Act 21 "establishes rights and procedures for the civil commitment of [SVDCs] who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons." 42 Pa.C.S. §6401. Accordingly, we have little difficulty concluding the General Assembly's intent with regard to Act 21 was not to punish SVDCs, but to provide procedures for their civil commitment and thereby promote public safety.

## B. *Mendoza-Martinez* Factors

We now consider the *Mendoza-Martinez* factors to determine whether the procedures and restrictions set forth in Act 21 are sufficiently punitive in effect to overcome the General Assembly's stated nonpunitive purpose. *Williams II*, 832 A.2d at 971.

### i. Is there an affirmative disability or restraint?

Inpatient treatment under Act 21 naturally places an affirmative disability or restraint upon SVDCs as they are required to reside at Torrance State Hospital until they are able to demonstrate they no longer have difficulty controlling sexually violent behavior in the inpatient setting. *See* 42 Pa.C.S. §6404(b)(2); *see also Hendricks*, 521 U.S. at 363 (civil commitment involves affirmative restraint). The outpatient treatment requirements of Act 21 can also involve affirmative disabilities; the court ordering outpatient treatment may impose conditions and restrictions regarding where an SVDC may reside and visit, and whom an SVDC may contact. 42 Pa.C.S. §6404.2(a). The outpatient treatment requirements may be more onerous than the registration requirements discussed in both *Williams II* and *Muniz* because, unlike in those cases, SVDCs do not "remain 'free to live where they choose [and] come and go as they please[.]'" *Williams II*, 832 A.2d at 973, *quoting Femedeer v. Haun*, 227 F.3d 1244, 1250 (10th Cir. 2000). Although this factor weighs in favor of finding Act 21 punitive, we are cognizant "that merely placing affirmative disabilities or restraints on [SVDCs] 'does not inexorably lead to the conclusion that the government has imposed punishment . . . [as t]he State may take measures to restrict the freedom of the dangerously mentally ill[, which] is a legitimate nonpunitive governmental objective and has been historically so regarded.'" *Butler II*, slip op. at 23-24, *quoting Hendricks*, 521 U.S. at 363 (internal citations and quotations omitted).

### ii. Are the restrictions the kind that have been historically regarded as a punishment?

As stated above, restricting the freedom of the dangerously mentally ill has been historically regarded as nonpunitive. *Hendricks*, 521 U.S. at 363. When viewed in the context of Act 21, we conclude this general principle applies to both inpatient treatment and the restrictions in Section 6404.2(a) that may be placed upon SVDCs who have been transferred to outpatient treatment. Moreover, our finding in *Muniz* that SORNA registration is akin to probation is not applicable to the outpatient treatment requirements at issue here. In *Muniz* we recognized the registration flowed from a criminal conviction, required periodic meetings with law enforcement, and entailed potential criminal prosecution for failure to comply. 164 A.3d at 1211-13. Here, SVDC designations result from a finding that the individual possesses a mental abnormality or personality disorder, which flows not from a conviction, but from an assessment by the Board. 42 Pa.C.S. §6358. Further, outpatient SVDCs meet with treatment providers rather than law enforcement and violation of their treatment plans results in a return to inpatient treatment rather than criminal consequences. 42 Pa.C.S §6404.2. Lastly, outpatient treatment, which is provided to SVDCs through a treatment plan developed by DHS and the Board and approved by the court, *see* 42 Pa.C.S. §§6404(c), 6404.1, has never been historically regarded as punishment. *See Williams II*, 832 A.2d at 977 ("counseling does not serve punitive ends notwithstanding its use as a condition of probation or parole" and "counseling, by its very nature, is rehabilitative"). We therefore conclude this factor weighs in favor of finding Act 21 nonpunitive.

### iii. Are the restrictions triggered only on a finding of scienter?

Our analysis of this factor directly aligns with our analysis in *Butler II* in which we stated:

> Our analysis of this factor in the present case is necessarily distinguishable from *Muniz*. In *Muniz*, we held the question of scienter made little difference because past criminal conduct is a necessary beginning point for all registration statutes such as SORNA. By comparison, although a criminal

conviction is also the necessary beginning point for the SVP determination process, the imposition of the RNC requirements is not based upon criminal conduct at all. Instead, the "'determination is made based on a mental abnormality or personality disorder rather than one's criminal intent.'" *Williams II*, 832 A.2d at 978, *quoting Hendricks*, 521 U.S. at 362 (internal quotations omitted). Accordingly, the RNC requirements are not triggered on the basis of a finding of scienter and this factor thus weighs in favor of finding the requirements are nonpunitive.

*Butler II*, slip op. at 26-27. In the same way the RNC requirements are imposed upon SVPs, Act 21 applies to SVDCs, not based on proof of criminal intent, but on a determination that the individual has a mental abnormality or personality disorder. 42 Pa.C.S. §6403(d). Furthermore, only a juvenile adjudication is required for Act 21 to apply, 42 Pa.C.S. §6403(a)(1), and a juvenile adjudication "is not a conviction of [a] crime[.]" 42 Pa.C.S. §6354(a). As criminal conduct is not the trigger for Act 21 to apply, and as it applies only after a determination that an individual has a mental abnormality or personality disorder, this factor weighs in favor of finding Act 21 nonpunitive.

### iv. Are the traditional aims of punishment — retribution and deterrence — promoted?

Although we recognize deterrence might be a natural consequence of lifetime inpatient or outpatient treatment, we are not persuaded Act 21 is intended to promote deterrence. We are cognizant that individuals "who cannot control their behavior due to a mental abnormality or personality disorder, are unlikely to be deterred from re-offending even by threats of confinement." *Butler II*, slip op. at 27, *citing Williams II*, 832 A.2d at 978 (internal citations omitted). Similarly, as DHS has represented that SVDCs are not subject to strategies that can be construed as punishment, and appellant does not dispute this representation, "it is difficult to conclude that persons confined under [Act 21] are being punished." *Hendricks*, 521 U.S. at 363 (internal quotation marks omitted). Act 21 does not apply to SVDCs based upon criminal conduct but upon a finding of a mental abnormality or personality disorder, 42 Pa.C.S. §6403(d), and further, no criminal

conviction is required at all but only a juvenile adjudication. 42 Pa.C.S. §6403(a)(1); 42 Pa.C.S. §6354(a) (juvenile adjudication is not criminal conviction). *See also Butler II*, slip op. at 27 (distinguishing *Muniz* because RNC requirements were not imposed based on criminal conviction but on subsequent finding of mental abnormality or personality disorder). As such, we conclude Act 21 promotes neither deterrence nor retribution, which "affix[es] culpability for prior criminal conduct[.]" *Muniz*, 164 A.3d at 1215 (internal quotation and citation omitted). Therefore, we find this factor weighs in favor of finding Act 21 nonpunitive.

### v. Does the statute apply to criminal conduct?

In *Butler II* we stated:

> Our analysis of this factor also significantly differs from our analysis in *Muniz*, where we concluded it held little weight. Again, although a criminal conviction is a necessary starting point for the SVP determination process, the RNC requirements are "not applied to conduct at all, but to an individual's status as suffering from a serious psychological defect[,]" *Williams II*, 832 A.2d at 978, such that "the individual [is] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9799.12. We conclude this factor weighs in favor of finding the RNC requirements to be nonpunitive.

*Butler II*, slip op. at 28 (brackets in original). Likewise, Act 21 does not apply to conduct, but to an SVDC's status as having "a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence[.]" 42 Pa.C.S. §6403(d). Moreover, as stated above, the starting point for the SVDC determination process is a juvenile adjudication, 42 Pa.C.S. §6403(a), which "is not a conviction of [a] crime[.]" 42 Pa.C.S. §6354(a). Accordingly, this factor weighs in favor of finding Act 21 nonpunitive.

### vi. Is the statute rationally related to an alternate nonpunitive purpose?

There is no dispute regarding this factor, which "is a most significant factor in our determination that the statute's effects are not punitive." *Williams II*, 832 A.2d at 979

(internal citation, quotation, and brackets omitted). Appellant concedes Act 21 is "rationally related to a purpose other than punishment and, therefore, this factor weighs against finding [Act 21] to be punitive." Appellant's Brief at 41. Indeed, the non-punitive purposes of Act 21 are clear: protecting the public from SVDCs "who, due to mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior[;]" and to provide "for involuntary treatment for said persons." 42 Pa.C.S. §6401. The Act 21 restrictions promote these express legislative goals by committing SVDCs to inpatient treatment away from the public until they no longer have difficulty controlling sexually violent behavior and continuing to treat SVDCs in an outpatient setting, which is "consistent with the protection of the public safety and appropriate control, care and treatment of the [SVDC]." 42 Pa.C.S §6404(b)(2). As such, this factor weighs in favor of finding Act 21 nonpunitive.

### vii. Do the restrictions appear excessive in relation to the alternative non-punitive purpose?

We first recognize the concerns regarding excessiveness raised in *Muniz* and *Williams II* are not relevant here. *Muniz*, 164 A.3d at 1218 (raising concerns regarding SORNA's over-inclusive nature); *Williams II*, 832 A.2d at 982-83 (raising concerns regarding lack of judicial review or removal mechanism). *See also Butler II*, slip op. at 29-30 (finding over-inclusiveness and lack of removal mechanism concerns are not relevant to excessiveness analysis). Act 21 is not over-inclusive as it applies only to individuals who: (1) have been adjudicated delinquent for a serious act of sexual violence; (2) were committed to an institution and remain in such institution upon attaining age 20 as a result of their adjudication for the act of sexual violence; and (3) are in need of involuntary treatment due to a mental abnormality or personality disorder resulting in serious difficulty controlling sexually violent behavior. 42 Pa.C.S. §6403(a). Furthermore, Act 21 provides for an annual review to determine whether inpatient SVDCs should be

moved to outpatient treatment, 42 Pa.C.S §6404(b)(2), and whether outpatient SVDCs should be discharged from the program entirely. 42 Pa.C.S. §6404.2(f)(2).

Appellant premises his argument regarding this factor on a claim the 2011 amendments are excessive because the onerous restrictions placed upon outpatient SVDCs vastly exceed any public safety concerns regarding individuals who have already been found to no longer have serious difficulty controlling their sexual behavior. Appellant's Brief at 41. Appellant's argument is based on a clearly erroneous reading of Act 21. In fact, Act 21 does not release SVDCs to outpatient treatment based on a general finding that they no longer have serious difficulty controlling their sexual behavior, but instead upon a finding "the person no longer has serious difficulty in controlling sexually violent behavior **in an inpatient setting**[.]" 42 Pa.C.S. §6404(c)(1) (emphasis added). The 2011 amendments act as a safeguard to ensure SVDCs are able to control their sexual behavior in public settings before being discharged from the program; if SVDCs are "having serious difficulty controlling sexually violent behavior **in an outpatient setting**[,]" they are returned to inpatient treatment. 42 Pa.C.S. §6404.2(e) (emphasis added). Rather than being excessive, the 2011 amendments provide a necessary second level of public protection and SVDC treatment. Accordingly, we conclude the Act 21 restrictions are not excessive in relation to the statute's primary purposes of protecting the public and providing treatment to SVDCs, and this factor weighs in favor of finding Act 21 nonpunitive.

### viii. Balancing of Factors

Despite the fact that Act 21 imposes obvious affirmative disabilities or restraints upon SVDCs, our review of the remaining *Mendoza-Martinez* factors leads to the conclusion the statutory scheme is not punitive in intent or effect. Act 21 provides treatment to SVDCs rather than imposing restrictions that were historically considered

punishment, and does not promote the typically punitive goals of deterrence and retribution. Furthermore, Act 21 protects the public from SVDCs, who have never been convicted of a crime, but are subject to the statutory restrictions because they are dangerously mentally ill. Lastly, Act 21, including the 2011 amendments, cannot be said to be excessive in light of the danger posed to the public by SVDCs. Based on all of the above, we conclude Act 21 does not constitute criminal punishment.

### IV. Conclusion

Our finding that the challenged provisions of Act 21 do not constitute criminal punishment dictates our conclusion that appellant's present claims pursuant to *Muniz* and *Butler I* fail; both appellant's *ex post facto* claims and his *Apprendi/Alleyne* due process claims require a finding that the statutory regime at issue constitutes criminal punishment. *See Muniz*, 164 A.3d at 1208 (*ex post facto* claims depend upon finding sanctions constitute criminal punishment); *Lee*, 935 A.2d at 880 (due process claims under *Apprendi* and *Alleyne* cannot succeed where sanctions do not constitute punishment). Accordingly, we affirm the order of the Superior Court.[14]

Chief Justice Saylor and Justices Baer, Todd, Donohue, Wecht and Mundy join this opinion.

---

[14] We need not reach the OAG's additional argument based on *Oregon v. Ice* that *Apprendi* and *Alleyne* do not apply to SVDC determinations under Act 21. OAG's Brief at 72-83.